In Re: Appeal of Upper Providence Police Delaware County Lodge #27 Fraternal Order of Police From Award of Arbitrators. Upper Providence Township, Appellant.

Argued June 3, 1985, before Judges Rogers and Doyle, and Senior Judge Blatt, sitting as a panel of three.

*D. Barry Gibbons, Gibbons, Buckley, Smith, Palmer and Proud, P.C.,* for appellant.

*Alexander A. DiSanti, Richard, DiSanti, Hamilton, Gallagher & Paul,* for appellee.

Opinion by Judge Rogers, December 4, 1985:

The questions raised in this appeal are (1) whether a court of common pleas has jurisdiction to hear an appeal from the decision of arbitrators in interest arbitration under Act 111[1] which raises only a question of the legality of the award and (2) if the common pleas court in this case had jurisdiction, whether it

---

[1] Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.10, popularly known as Act 111, providing policemen and firemen the right to bargain collectively with their public employers concerning the terms and conditions of their employment.

correctly held that the arbitrators' decision was contrary to law.[2]

During the year 1982, the appellant, Upper Providence Township, Delaware County (township), and the appellee, Upper Providence Police Delaware County Lodge No. 27, Fraternal Order of Police (police), engaged in collective bargaining pursuant to Act 111 for a collective bargaining agreement effective January 1, 1983. An impasse was reached within the meaning of Section 4(a) of Act 111, 43 P.S. §217.4(a), concerning the legality of an existing retirement benefit which had been conferred on police persons beginning in 1976 by several earlier agreements and one arbitration award. The disputed provision gave retirees "the full hospital and medical benefits in effect at the time of retirement (whether for service or disability) to continue annually after retirement until death; these benefits to be offset by any similar benefits received from the government or any other employment."

The township's position was and is that the provision is illegal. The position of the police seems to have been that the township, having agreed to the provision

[2] The appellant, Upper Providence Township, Delaware County, also submitted a question to the effect that the appellee FOP Lodge No. 27, having agreed that the arbitrators should decide the issue of the legality of the provision of hospital benefits to retired police persons, is estopped from appealing the arbitrators' decision. The appellant cites the case of *Fraternal Order of Police v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982), and the cases cited by Chief Justice Nix in his opinion in that case. The holding of *Hickey* was that the public employer was estopped from arguing that a clause of a collective bargaining agreement to which it had agreed was illegal. If the parties to this case had agreed to the provision of hospital and medical benefits to retired police persons should be provided, *Hickey* would require that the township should be estopped from disavowing it on the ground of illegality. Here the parties could not and did not agree but submitted the provision to arbitration as Act 111 required.

should be estopped from asserting its illegality; the position of the police now is that the provision is perfectly legal. The parties agreed "to submit the issue of illegality of this benefit for consideration of the Board of Arbitrators."

By award made in late December, 1982, the arbitrators by vote of two to one continued the hospital and medical benefits during the calendar year 1983 but declared that they should not be in effect during the calendar year 1984. The parties agree that the decision of the majority of the arbitrators was that the provision of hospital and medical benefits was illegal.

The police appealed the award to the court of common pleas which first dismissed it for want of jurisdiction; but later, on application of the police, reconsidered and thereafter held that it had jurisdiction and that the arbitrators' award disallowing the disputed provision as illegal was contrary to law.

The township has appealed, contending, as we have first noted, that the court's final decision that it had jurisdiction was error, as was also the court's decision that hospital and medical benefits for retired police officers of Upper Providence Township are not contrary to law.

Section 7(a) of Act 111, 43 P.S. §217.7(a), provides that "[t]he determination of the majority of the board of arbitration . . . shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved" and that "[n]o appeal therefrom shall be allowed to any court." The meaning of these provisions was explored in the *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969). The Pennsylvania Supreme Court there held that, Act 111 having declared awards of boards of arbitrators to be final and having forbidden appeals to any court, the City of Washington, Pennsyl-

vania, did not have the right to appeal an award made by a board of arbitrators to the court of common pleas; that the common pleas court had no jurisdiction of such an appeal; but that the Supreme Court would entertain the City's appeal as an application for review in the nature of narrow certiorari pursuant to then Supreme Court Rule 68½.[3] The Supreme Court observed that narrow certiorari permits review only of (1) a question of jurisdiction, (2) the regularity of the proceedings, (3) questions of excess in the exercise of powers, and (4) constitutional questions; but then declared that the direction by arbitrators that the City perform an illegal act, as was alleged, would be in excess of the powers, making it appropriate for the court to review the disputed provision award for legality. The court concluded upon examination that the provision was illegal and nullified it.

The appellant township relies on *Washington Arbitration Case,* positing that, having in its appeal below raised only the question of the legality of the arbitrators' award and none of the matters reviewable on narrow certiorari, the police had no right to appeal and the court no jurisdiction to review the award.

The police contend that Act 111 arbitration awards are now reviewable by courts for errors of law; that Section 501(a) of the Act of October 5, 1980, P.L. 693, added the Uniform Arbitration Act to Title 42 of Pennsylvania Consolidated Statutes, as Subchapter A of Chapter 73, Arbitration. 42 Pa. C. S. §7302 provides relevantly:

§7302.  Scope of subchapter

. . . .

(d)  Special application.—

---

[3] Rule 68½ is now embodied in **Pa. R.A.P. 3309.**

(1) Paragraph (2) shall be applicable where:

. . . .

(ii) A political subdivision submits a controversy with an employee or a representative of employees to arbitration.

(iii) Any person has been required by law to submit or to agree to submit a controversy to arbitration pursuant to this subchapter.

(2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

The plain meaning of the quoted parts of Section 7302 is that where a political subdivision submits a controversy to arbitration, a court in reviewing the arbitration award shall modify or correct the award where it is contrary to law. The Act of 1980 postdates Act 111, and *Washington Arbitration Case,* interpreting the meaning and effect of that Act's provisions that arbitrators' awards shall be final and that no appeal shall be allowed to any court. Hence, the limitations upon court review imposed by Act 111 are overthrown; and courts reviewing arbitration awards under Act 111 may "modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict."

The township contends that an Official Source Note to 42 Pa. C. S. §7302 demonstrates that the Gen-

eral Assembly did not intend to disturb narrow certiorari as the scope of judicial review of Act 111 arbitrations. The Note reads:

Compare Act of April 25, 1927 (P.L. 381, No. 248), §16 (5 P.S. §176). Subsection (c) is intended as a codification of Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc., 461 Pa. 420, 336 A.2d 609 (1975). Subsection (d) is intended to preserve without change the scope of review which presently exists over awards of arbitrators such as those appointed under the Act of June 24, 1968 (P.L. 237, No. 111) (43 P.S. §217.1 et seq.). See Act of April 25, 1927 (P.L. 381, No. 248), §11(d) (5 P.S. §171 (d)).

We seriously doubt that the authors of the Note had review on narrow certiorari in mind in composing this Note because the focus of the Note is on Section 11(d) of the Act of April 25, 1927, of which subsection (d) 2 of Section 7302 is a chinese copy. The case of *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.*, 461 Pa. 420, 336 A.2d 609 (1975), referred to in the Note, principally held that the Act of April 25, 1927, had not been repealed by the Arbitration of Claims Act of 1937 so that the arbitration in that case had been properly conducted under the Act of April 25, 1927. Scope of judicial review was not a subject of decision or discussion in that case. Therefore the comment of the Note that Section 3702 was meant as a codification of *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.* suggests that the authors meant that it was the Act of April 25, 1927, including Section 11(d), which was thereby codified. Moreover, we are satisfied that the authors' comment that subsection (d) of Section 7302 was "intended to preserve without change the scope of review which presently

exists over awards of arbitrators such as those appointed under" Act 111, was simply unmindful of *Washington Arbitration Case;* and that by the "scope of review which presently exists" they meant the scope of review of arbitrations provided by Section 11(d) of the Act of April 25, 1927. This is demonstrated by the citation of that subsection of that Act which immediately follows the reference to Act 111.

In any case the Statutory Construction Act at 1 Pa. C. S. §1939 requires that the text of the statute shall control in the event of conflict between its text and comment of any entity which had a hand in drafting it. If the Note does mean to say that narrow certiorari remains the scope of review of awards of arbitrators under Act 111, it is inconsistent with the text of Section 7302(d)(2) and must be disregarded.

It is important to write at this point that the central holding of *Washington Arbitration Case*—that an award of arbitrators under Act 111, or any other Act, may not mandate that a governing body carry out an illegal act—remains viable. That ruling has been often reaffirmed and emphatically so in *Chirico v. Board of Supervisors for Newtown Township,* 504 Pa. 71, 74, 470 A.2d 470, 472 (1983).

Having concluded that the trial court had jurisdiction to review the arbitrators' decision for error of law, we pass now to the township's contention that the trial court erred in deciding that the hospital and medical benefits in question were not contrary to law. The township relies on *Saffren v. Board of Supervisors for Newtown Township,* 65 Del. Co. 310 (1978), and *Pottstown Police Association v. Pottstown Borough,* 75 D. & C. 2d 331 (1975), the first holding that certain pension benefits conferred by arbitrators violated a police pension fund limitation imposed on boroughs, towns and townships having more than three

police officers by Section 5 of the Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. §771; and the second holding that similar benefits violated Section 1202(37) of the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §46202 (37), in effect forbidding the purchase of insurance for retired employees, a provision identical to Section 702, cl. XIII, of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65713. Neither of the municipality parties to those cases was under the governance of a Home Rule Charter adopted pursuant to the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 184, *as amended,* 53 P.S. §§1-101 through 1-1309 (HRCOP). Upper Providence Township is a home rule charter municipality.

Section 302(a) of HRCOP, 53 P.S. §1-302(a), provides that home rule charters shall not give any power contrary to, or in limitation of or enlargement of powers granted by acts of the General Assembly which are applicable to a class or classes of municipalities with respect to ten named subjects. None of these subjects is, and none bears upon, pension benefits. In addition, subsection (b) of Section 302 of HRCOP provides that "no municipality shall . . . (ii) exercise powers contrary to, or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable in every part of the Commonwealth." Section 5 of the Act of May 29, 1956, limiting the amount of pension benefits to one-half of retirement salary, which the *Saffren* court held rendered the benefit in that case illegal is applicable to boroughs, towns, and townships maintaining a police force of three or more full-time members; it is not therefore applicable in every part of the Commonwealth and hence not apposite here. Neither is the Borough Code upon which

the *Pottstown Police Association* case rested nor the Second Class Township Code, upon which the township relies, applicable in every part of the Commonwealth. On this point, we return to *Washington Arbitration Case,* where Justice, later Chief Justice, ROBERTS, after observing that "[w]e are well aware of the fact that the legislative policy precluding the payment of premiums such as those involved in this case [for hospitalization insurance for the families of employees] may be weak indeed," cited as evidence of such weakness the Optional Third Class City Charter Law giving "a broader range of power" to that class of municipality. 436 Pa. at 178, 259 A.2d at 443.

The parties have briefed and argued the question of whether the common pleas court properly declared by dictum that Section 302(b)(iii) of HRCOP, 53 P.S. §1-302(b)(iii), providing that "no municipality shall ... be given the power [by its charter] to diminish the rights or privileges of any former municipal employe" forbade Upper Providence Township from terminating these benefits which had been conferred by earlier collective bargaining agreements and arbitration award. This question is not germane because the township was not here seeking to diminish benefits of former employees; it was seeking through bargaining to obtain a contract in which the benefits might be eliminated in future as unlawful.

Order affirmed.

## ORDER

AND Now, this 4th day of December, 1985, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is affirmed.

Judge BLATT concurs in the result only.

282

CONCURRING AND DISSENTING OPINION BY JUDGE DOYLE:

I can concur only partially with the result reached by the majority in that I can agree only that the denial of benefits by the arbitrators should be reversed as to presently retired employees and all police officers presently in the retirement system. I must dissent however from the implicit holding reached by the majority that such benefits must be awarded to any employee who would enter the retirement system after the date of the arbitrators' award.

Two major issues present themselves for our review. The first deals with the proper scope of review of an arbitration award and the second deals with the substantive question of whether the award made by the arbitrators denying post-retirement medical benefits for the year 1984 was legal. It is important to bear in mind, that the award entered by the arbitrators was a split one, that is, benefits were *granted* for 1983 but *denied* for 1984. It is also essential to keep in mind that the only appeal from the arbitrators' award, by the police, was from the denial of the post-retirement medical benefits for 1984 and thus the issue before the trial court was whether *that* denial of benefits was illegal. The issue was not whether the *award* of benefits for 1983 was illegal.

## SCOPE OF REVIEW

The majority opinion, in my view, contains an incorrect analysis and conclusion of the scope of review issue. The majority concludes that Section 7302 of the Uniform Arbitration Act (UAA), 42 Pa. C. S. §7032, which was admittedly enacted after Act 111[1] and permits courts to review arbitration awards and

---

[1] Act of June 24, 1968, P.L. 237, 43 P.S. §217.1-§217.10.

modify and correct such awards when they are "contrary to law", has expanded the court's scope of review of arbitration cases and has overthrown the limitations of Act 111 as determined by our Supreme Court in *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969). Slip Op. at p. 5. I most emphatically disagree. The scope of review of *Washington Arbitration Case,* has been recently reaffirmed by our Supreme Court in *Township of Moon v. Police Officers of the Township of Moon,*       Pa.    , 498 A.2d 1305 (1985), a decision that dealt with the UAA in a substantial manner. Moreover, by reference to Section 7302(b) of the UAA, 42 Pa. C. S. §7302(b), we are instructed that the subchapter applies only "where the arbitration . . . is consistent with any statute regulating labor and management relations." The scope of review of a court over an arbitration award under Act 111, *i.e.,* under a standard of narrow certiorari, is inconsistent with and vastly different from a review standard which would allow the court to "modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury, the court would have entered a different judgment or a judgment notwithstanding the verdict." 42 Pa. C. S. §7302(d)·(2). Nor is that the only area where the UAA and Act 111 would be inconsistent. Compare, *e.g.,* the procedure for the appointment of a third arbitrator on the occasion of an impasse, Section 4 of Act 111, 43 P.S. §217.4 (appointment by reference to the American Arbitration Association) and Section 7305 of the UAA, 42 Pa. C. S. §7305, (by the Court); also compare the time constraints imposed on the arbitrators within which to make their determination, Section 4(b) of Act 111 (within thirty days after the appointment of the third arbitrator) and Section 7310 of the UAA, 42 Pa. C. S. §7310, (within the time fixed by the agreement or if not so fixed, then as ordered

by the court on the application of a party). It is also worth noting that the official source Note accompanying Section 7302 of the UAA indicates an intent to preserve "without change the scope of review which presently exists over awards of arbitrators such as those appointed under [Act 111]." The majority statement that the limitations upon court review imposed by Act 111 have been *overthrown* by the UAA, is patently irreconcilable with the source Note which, as above referenced, indicates an intention to *preserve without change,* the scope of review under Act 111.

Furthermore, while I do not disagree with much of the majority's analysis of *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.,* 461 Pa. 420, 336 A.2d 609 (1975), referred to in the source Note, I disagree that by reference to that decision the commentators meant to preserve the scope of review *in labor-management relations* as has been suggested by the majority. Rather, as specifically pointed out by the majority, the scope of judicial review was *not* the subject of the decision. But what was discussed in *Sanders & Thomas* was the following:

> Of particular importance with respect to *contracts* entered into by 'public bodies' is Section 16 [of the 1927 Act], which provides as follows:
>
> > 'The provisions of this Act shall apply to any *written contract* to which the Commonwealth of Pennsylvania, or any agency or subdivision thereof, or any municipal corporation or political division of the Commonwealth shall be a party.' (5 P.S. §176).
>
> (Footnote omitted.) (Emphasis added.)

*Sanders & Thomas, Id.* at 427, 336 A.2d at 613. Simply stated, the Act of 1927 did not deal with arbitration in the area of public employee labor-management dis-

putes. Furthermore, the commentators in the source Note make reference to *Sanders & Thomas* only with relationship to subsection (c) of Section 7302, a section dealing only with government contracts. Finally, Section 501(b) of the Act of October 5, 1980, P.L. 695, pointedly instructs that the provisions of Subsection (d)(2) of Section 7302, relating to the special application of the error of law-scope of review, only applies where the parties in their agreement expressly provide.[2]

A review of some decisions of this Court decided subsequent to the Supreme Court's decision in *Washington Arbitration Case,* has led me to conclude that we have confused the standard laid down by the Supreme Court by failing to use the precise language, "questions of excess in exercise of powers," and instead utilizing the term "questions of law."[3] This substitution of language is indeed unfortunate and should be discredited. In any event, we are, of course, in

[2] Section 501(b) of Act 1980, Oct. 5, P.L. 693, No. 142, provides as follows:

The provisions of 42 Pa. C. S. §7302(d)(2) (relating to special application) shall be applicable to any nonjudicial arbitration pursuant to:

(1) An agreement made prior to the effective date of this act which expressly provides that it shall be interpreted pursuant to the law of this Commonwealth and which expressly provides for statutory arbitration.

(2) An agreement heretofore or hereafter made which expressly provides for arbitration pursuant to the former provisions of the Act of April 25, 1927 (P.L. 381, No. 248), relating to statutory arbitration.

[3] See *City of Erie, Pennsylvania Appeal,* 74 Pa. Commonwealth Ct. 245, 459 A.2d 1320 (1983); *Chirico v. Board of Supervisors of Newtown Township,* 63 Pa. Commonwealth Ct. 591, 439 A.2d 1281 aff'd in part and rev'd in part, 504 Pa. 71, 470 A.2d 470 (1983); *Borough of Ambridge Appeal,* 53 Pa. Commonwealth Ct. 251, 417 A.2d 291 (1980).

fact, bound by the pronouncements of *Washington Arbitration Case* and its progeny.

It is also interesting to note that the trial court, when it first decided this case, in its opinion dated January 27, 1984, held that *Washington Arbitration Case,* was the proper scope of review and indicated that the police officers were seeking to *expand* the strictures of *Washington Arbitration Case.* The trial court refused to permit such a result.

The trial court then, in its opinion of June 15, 1984, entered subsequent to reconsideration, reversed itself, changed its view on the applicable scope of review and *cited* the same *Washington Arbitration Case* as a further *expansion* of the scope of review announced in *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A.2d 139 (1944).[4]

Finally, I do not believe *Washington Arbitration Case* has *expanded* our scope of review, but rather, the clear import of that case is that review is on a more *restrictive* narrow certiorari scope of review.

Compare the trial court's statement that "the increasing trend is towards judicial review of arbitration. awards" with the Supreme Court's statement in *Township of Moon:*

As we noted in Chirico v. Board of Supervisors for Newton Township, 504 Pa. 71, 470 A.2d 470 (1983) (Chirico):

Act. 111 does not set forth the specific mechanism by which grievance, as compared with interest, disputes are to be arbitrated. We acknowledge it is clearly inadequate to recognize a right 'to a settlement of grievances or

---

[4] Both *Smith* and *Sanders & Thomas* involved disputes over construction contracts and resolutions by arbitrations under the Act of April 25, 1927, P.L. 381, *as amended, formerly* 5 P.S. §§161-179, repealed by Section 501(c) of the Act of October 5, 1980, P.L. 693.

disputes,' while failing to provide any method for the implementation of those rights. This obvious vacuum must not be countenanced. Yet resort to the courts to meet this need would contravene the strong affirmance of the use of nonadversarial methods for the resolution of disputes between governmental employers and police and firemen embodied in section two of the Act.

First, Act 111 specifically avoids the use of the courts for dispute resolution. This policy is so strong that section seven of the Act, 43 P.S. 217.7, provides for binding arbitration and contains the unique provision that '[n]o appeal therefrom shall be allowed to any court.' Thus the only method for settling grievance disputes allowable within the framework of Act 111 is arbitration. This objective would be completely frustrated if we were to superimpose by judicial fiat, a layer of court intervention.

*Id.* at 78-79, 470 A.2d at 744-45 (footnote omitted).

### THE LEGALITY OF THE AWARD

The trial court, after defining its scope of review, then went on to consider whether the award was legal in light of the strictures of Section 302(b) of the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 184, *as amended,* 53 P.S. §1-302 (b) (HRCOPL). Section 302(b) provides in pertinent part:

(b) No municipality shall . . . (ii) exercise powers contrary to, or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable in every part of the Commonwealth, (iii) be given the power to diminish the rights or privileges of any former

municipal employe entitled to benefits or any present municipal employe in his pension or retirement system. . . .

The major portion of the trial court's opinion deals with the award of benefits for 1983, an issue as I noted earlier that was *not* appealed.[5] But because the trial court and the majority opinion however have chosen to consider this issue, the solution of this problem now inextricably binds together both the 1983 award and the 1984 denial of benefits. Under subsection (ii) of the HRCOPL the trial court is correct in its determination that there has been no single act of the legislature of statewide application that precludes an award of medical benefits to retired employees and to employees not yet retired but who are already within the system. No one statute prohibits such an award and a review of the individual statutes pertaining to the various political subdivisions discloses that, indeed, under Section 4303.1 of the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §39303.1, added by Section 1 of the Act of May 13, 1957, P.L. 134, *as amended,* an award of such benefits to persons already retired is specifically authorized. While this analysis demonstrates that the award of benefits was not precluded by subsection (ii) it does not reach the specific issue of whether the *denial* of benefits for 1984 was illegal.

. . . It is here that a determination of the trial court's proper scope of review is crucial. For if the proper scope of review of an arbitrator's decision is under narrow certiorari, (a question of the excess in the ex-

---

[5] The trial court presented the issue as follows: "The ultimate issue before this Court is whether the Township's providing post-retirement insurance benefits is legal." To the contrary, I believe the ultimate issue for consideration should have been whether the *denial* of the post-retirement insurance benefits for 1984 was legal.

ercise of powers), *Washington Arbitration Case*, under the trial court's analysis the court would have been obligated to *affirm* the award of the arbitrators, including the *denial* of benefits for 1984. However, if the scope of review is the expanded error of law review, the court might well conclude as it did that the arbitrators committed an error of law in *denying* benefits in 1984 because the arbitrators reasoned that such denial was mandated because the *award* was illegal (the award in 1983, not having been appealed, would be left intact).

This result is not now reached because of an error in the trial court's analysis. In analyzing the legality of the denial of benefits for 1984 the court indicated that under subsection (iii) two categories of persons receive benefits, *i.e.*, a) those retiring before the contract was arbitrated, and b) those retiring thereafter. The trial court then concluded that the Township lacked authority to diminish the award to *either* group and hence that "the arbitrators committed an *error of law* in denying the police this benefit." (Emphasis added.)

I would agree that subsection (iii) divides municipal employees into two classifications, but disagree with the class designation of the trial court. The two classes created under subsection (iii) are a) those in the system whether in active or in retired status at the time the contract was entered into, and b) *those not yet in the system*. As to those already in the system (whether retired *or* on active status) their rights palpably, cannot be diminished without violating subsection (iii). The diminishment would be in excess of the arbitrators' authority. *Washington Arbitration Case*. Subsection (iii) precludes a municipality from diminishing "the rights or privileges of any former municipal employe entitled to benefits or any

present municipal employe in : . . . [the] retirement system.'' But as to those not yet in the system, certainly a new benefits package less favorable to employees can be initiated with respect to them.[6]

. . Therefore, to conclude, regarding the question of whether the HRCOPL precludes the arbitration award of benefits for 1983, as I explained earlier I agree that there is no statewide preemption that would preclude such an award of benefits in this case. But, I disagree with the majority's suggestion that such a preclusion can in fact only exist if there is a *single* statute regulating the entire Commonwealth. In my view, if a combination of statutes taken together impose a blanket wide prohibition of a certain activity, that activity would be precluded under Section 302 (b)(ii) of the HRCOPL. In other words, if there were no one statute which precluded award of medical benefits to retirees but via a series of statutes such as those appearing in Section 1202(37) of The Borough Code,[7] Section 1502 of The First Class Township Code,[8] Section 702 of the Second Class Township Code,[9] Section 2403 (53) of the Third Class City Code,[10] the *effect* was total preclusion, I would hold that the award of such benefits would be illegal. Thus, unlike the majority I do not read subsection (ii) as requiring a single statute for statewide preclusion to occur.

---

[6] Based on my interpretation of subsection (iii) I reject the Township's argument that under Section 302(c) of the HRCOPL a home rule community may withdraw benefits conferred to those already within the system.

[7] Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §46202(37).

[8] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §56523.

[9] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §65713. Section 702 was repealed in part by Section 802 of the Act of November 26, 1978, P.L. 1399, *formerly* 53 P.S. §5311.802.

[10] 53 P.S. §37403(53).

As to the question of whether the *denial* of benefits for 1984 was proper, it appears that the majority never directly considers this issue. Instead, it rejects the analysis proffered by the trial court on this issue, but then affirms the trial court's result without offering any rationale for doing so.

In summary, I believe however, as did the trial court, that the 1984 denial of benefits constituted a "diminishment" of benefits to employees currently in the system, specifically those who are retired *and* those who are in active status, under Section 302(b)(iii) of the HRCOPL. But I do not reach this result, as did the trial court, on the basis of finding it to be an error of law. Rather, I believe it to be an *"excess in the exercise of powers"* as that term is used in *Washington Arbitration Case* and accordingly, I would affirm the order of the trial court that "post-retirement insurance benefits are legal and irrevocable, once given," but I would reverse the trial court in its implicit ruling that the arbitrators award should be set aside as it would apply to any new members of the police force. Accordingly, a remand for the entry of a proper order would be required.