526 A.2d 315

**In re Appeal of UPPER PROVIDENCE POLICE DELAWARE COUNTY LODGE # 27 FRATERNAL ORDER OF POLICE From Award of Arbitrators.**

**Appeal of UPPER PROVIDENCE TOWNSHIP.**

Supreme Court of Pennsylvania.

Argued Jan. 29, 1987.

Decided May 22, 1987.

---

502

D. Barry Gibbons, Media, for appellant.

Alexander A. DiSanti, Media, for appellee.

Before NIX, C.J., and, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

We granted allocatur in this case to address two issues: (1) the proper scope of review of an arbitration award under "Act 111," Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §§ 217.1–217.10 (Supp.1986) ("Collective Bargaining By Policemen Or Firemen"); and (2) whether the lower courts erred in reversing the award of the arbitrators which denied certain post-retirement hospital and medical benefits for 1984.

Upper Providence Township (Township) bargained collectively under Act 111 with the representative of its police, the Fraternal Order of Police, Delaware County Lodge Number 27 (FOP), in an attempt to reach a collective bargaining agreement for the calendar years 1983 and 1984. On December 22, 1982, an agreement was reached on all but one issue, as to which an impasse was declared and impasse arbitration was triggered under section 4 of Act 111, 43 P.S. § 217.4.

An arbitration panel was selected and the Township and the FOP submitted to the panel an extensive agreement on the agreed-to items, and a stipulation as to the one issue in dispute, the legality of the hospital and medical benefits that were currently being provided to retired bargaining unit members. The stipulation of the parties concerning this impasse issue reads as follows:

27. *Medical After Retirement*: Although the Upper Providence Police through their bargaining representative, Lodge # 27, Fraternal Order of Police, dispute the Township's attempt to bargain over this issue for 1983 and 1984 because of the Township's failure to identify this issue as "an issue in dispute" within the meaning of Act 111, *the parties agree that the following benefit first agreed to in the 1976–77 collective bargaining agreement is deemed to be illegal by the Township*:

*The full hospital and medical benefits in effect at the time of retirement* (whether for service or disability) *to continue annually after retirement until death.* These benefits shall be offset by any similar benefits received from the government or any other employer.

Although the Township deems this benefit to be illegal, the FOP # 27 believes that the Township should be estopped from asserting any possible illegality because this benefit has been renewed through two collective bargaining agreements and one arbitration award since it was first agreed to by the Township in 1976. *The parties to this contract, however, agree to submit the issue of illegality of this benefit for the consideration of the Board of Arbitration.* (emphasis added).

An arbitration hearing was conducted on December 12, 1982, and on December 23, 1982, two of the three arbitrators rendered the following award:

1. The attached Stipulation of the Parties dated December 22, 1982, concerning certain terms and conditions of employment of Policemen of the Township of Upper Providence for the calendar years 1983 and 1984, com-

mencing January 1, 1983, is incorporated and made a part hereof.

2. For calendar year 1983:

The full hospital and medical benefits in effect at the time of retirement (whether for service or disability) to continue annually after retirement until death. These benefits shall be offset by any similar benefits received from the government or any other employer.

3. For calendar year 1984:

The benefits set forth in number 2. above shall not be in effect for calendar year 1984.

While it is not apparent from this award (which was rendered without opinion), the stipulation of the parties and the dissenting opinion of arbitrator Rodger Mutzel, Esq., make it clear that a "majority of this panel has concluded that this benefit is illegal and therefore has refused to continue this benefit beyond 1983." (From arbitrator Mutzel's dissenting opinion at R. 23a.) (The parties to this appeal agree that the majority members of the arbitration panel reached their decision to deny post-retirement hospital and medical benefits for 1984 based on their determination that such benefits were illegal. *See* Opinion Announcing Judgment of the Court per Rogers, J., at 93 Pa.Cmwlth. 272, 502 A.2d 263 at 264.)

The FOP appealed from the award of the arbitrators denying these benefits for 1984 to the Court of Common Pleas of Delaware County.[1] By order of January 26, 1984, that court dismissed the FOP's appeal, finding that it had no jurisdiction over the matter. However, the lower court granted the FOP's petition for reargument, held a rehearing, and issued a supplemental opinion on June 15, 1984, reversing its previous order. This opinion held that the court had jurisdiction to hear the FOP's appeal, that it could

---

1. It is also not apparent why the majority of the arbitrators awarded the post-retirement hospital and medical benefits for 1983, since they had determined such benefits were illegal. Nevertheless, the Township did not appeal from the *grant* of those benefits for 1983, and the only issues in this appeal concern the *denial* of those benefits for 1984.

review the arbitration award for errors of law, and that the arbitrators committed an error of law in revoking the post-retirement benefits because such benefits "are legal and irrevocable, once given."

The Township appealed that determination to the Commonwealth Court which affirmed on December 4, 1985, with Judge Rogers authoring the opinion announcing the judgment of the court, Judge Blatt concurring in the result only, and Judge Doyle filing a concurring and dissenting opinion. Judge Rogers held that the court of common pleas had jurisdiction to hear an appeal of an award of arbitrators under Act 111 and the *City of Washington v. Police Department of Washington,* 436 Pa. 168, 259 A.2d 437 (1969). (In *City of Washington,* this Court held that, despite the language of Act 111 that the determination of a board of arbitrators "shall be final on the issue or issues in dispute ... [and] No appeal therefrom shall be allowed to any court....", 43 P.S. § 217.7(a), nevertheless the courts have jurisdiction to review Act 111 arbitration awards in the nature of narrow certiorari. Such review is limited to questions concerning (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess in exercise of the arbitrators' powers; and (4) constitutional questions. *City of Washington, supra,* 436 Pa. at 174, 259 A.2d at 441; *Guthrie v. Borough of Wilkinsburg,* 508 Pa. 590, 597, 499 A.2d 570, 573 (1985)). Accepting the argument of the FOP, Judge Rogers further held that the Act 111/*City of Washington* scope of review of an arbitration award had been *expanded* by the Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301–7320, to permit a court to review the award for errors of law and to require the reviewing court to "modify or correct the award where it is contrary to law." 502 A.2d at 265. Judge Rogers then affirmed the trial court's determination that the arbitrators had committed an error of law in denying post-retirement hospital and medical benefits for 1984, albeit on somewhat different reasoning than the trial court. 502 A.2d at 266–67.

In his concurring and dissenting opinion, Judge Doyle disagreed with the conclusion that the Uniform Arbitration Act had expanded or modified the Act 111/*City of Washington* scope of review and with the conclusion that an arbitration award may be reviewed for errors of law. He agreed with Judge Rogers, however, that the arbitration award denying the contested benefits for 1984 should be reversed, not because the arbitrators had committed an error of law but because the award was an illegal diminishment of benefits and, therefore, in excess of the arbitrators' powers.

We granted the Township's petition for allowance of appeal. Although we disapprove of the reasoning and conclusion of the lower courts regarding the scope of review of an arbitration award under Act 111, we will affirm the reversal of the elimination of post-retirement hospital and medical benefits for 1984 on the grounds that, as Judge Doyle correctly observed, such award was in excess of the arbitrators' powers.

■ The Township initially asserts that there is no "general right of appeal from an award of arbitrators" under Act 111, and that the court of common pleas had no jurisdiction to review the arbitration award in this case. We may quickly dispose of this argument which, once again, confuses the issue of subject matter jurisdiction with issues concerning the proper exercise of that jurisdiction. As we have noted, and as the Township concedes, policemen may seek judicial *review* of an Act 111 arbitration award in the nature of narrow certiorari to determine whether the arbitrators had jurisdiction, the regularity of the proceedings, whether the arbitrators exceeded their powers and authority, and constitutional questions. This right of review by way of narrow certiorari was predicated in *City of Washington* upon our former Supreme Court Rule 68½, but subsequent cases of this Court have made it clear that, although "Rule 68½ has since been repealed, we will retain the stated scope of review." *Township of Moon v. Police Officers of Township of Moon,* 508 Pa. 495, 500 n. 4, 498 A.2d 1305 (1985).

Whether the review of the award is called an appeal, certiorari, or something else, a court of common pleas has jurisdiction to review an Act 111 arbitration award. It is not the label attached to the pleadings and papers but the subject matter of the case or controversy that governs the right to lodge an appeal or seek review, and dictates the proper court in which to seek such review. *See* Pa.R.A.P. Rules 1102–03 (Improvident Appeals and Improvident Petitions for Allowance of Appeal) *and* Rules 1503–04 (Improvident Appeals or Plenary Actions and Improvident Petitions for Review). The court of common pleas obviously had subject matter jurisdiction to review the Act 111 arbitration award.

The Township also asserts that the lower courts have adopted and applied an erroneous standard of review of an Act 111 arbitration award in holding that Act 111 had been modified and, at least in part, superseded by the Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301–7320. We agree.

In 1968, the legislature established the right of policemen or firemen employed by the Commonwealth or by its political subdivisions to bargain collectively over "terms and conditions, of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits...." Section 1 of Act 111, 43 P.S. § 217.1. Act 111 also established the arbitration mechanism and procedures for implementing this right to collective bargaining. *See* Sections 3–8, 43 P.S. §§ 217.3–217.8. Act 111 did not contemplate judicial review, and therefore did not provide a standard of review.

The Uniform Arbitration Act (the UAA) adopted by the legislature in 1980, was a broader measure establishing uniform arbitration procedures regarding "collective bargaining agreement[s] to arbitrate controversies between employers and employees;" and "government contracts." 42 Pa.C.S.A. § 7302 (b) and (c), respectively. However, as to collective bargaining agreements between employers and employees, the statutory arbitration procedures under subchapter A, 42 Pa.C.S.A. §§ 7301–7320, are made applicable

*"only where the arbitration* pursuant to this subchapter *is consistent with any statute regulating labor and management relations."* 42 Pa.C.S.A. § 7302(b). Section 7302 (d) establishes a judicial standard of review of an arbitration award where a political subdivision submits a controversy with its employees or representatives to arbitration; that standard of review is as follows:

(2) *Where this paragraph is applicable a court* in reviewing an arbitration award pursuant to this subchapter *shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.*

42 Pa.C.S.A. § 7302(d)(2) (emphasis added).

The issue presented is whether the standard of judicial review of an arbitration award under the UAA is "consistent with any statute regulating labor and management relations," specifically, whether the UAA standard of review is consistent with Act 111. The FOP argues that this standard of review under the UAA is consistent with Act 111, and therefore applicable to Act 111 arbitration awards, because Act 111 did not explicitly set forth a standard of judicial review. We reject this argument.

It is true that Act 111 does not specify a standard of judicial review of an arbitration award between policemen and firemen and their public employers. In fact, Act 111 provides that the determination of the board of arbitrators "shall be final" and "no appeal therefrom shall be allowed to any court." Section 7, 43 P.S. § 217.7. As noted, this Court held in *City of Washington* that, despite the "no appeal" language, courts had inherent, although limited, power to review Act 111 arbitration awards for questions concerning the jurisdiction of the arbitrators, the regularity of the proceedings, an excess in the exercise of the arbitrators' powers, and any constitutional questions. The determination that courts had authority to so review Act 111 arbitration awards, and the standard of review set forth in

*City of Washington* have been consistently adhered to by this Court. *See, e.g., Guthrie v. Borough of Wilkinsburg, supra; Chirico v. Board of Supervisors for Newton Township,* 504 Pa. 71, 470 A.2d 470 (1983); *Township of Moon v. Police Officers of Township of Moon, supra; Lower Merion Fraternal Order of Police Lodge Number Twenty-Eight v. Township of Lower Merion,* 511 Pa. 186, 512 A.2d 612 (1986) reargument heard on January 29, 1987 (evenly divided Court affirming Commonwealth Court; all six participating Justices in agreement, however, with *City of Washington* standard of review as governing).

The legislature was well aware of *City of Washington* and its progeny when it enacted not only the UAA, but also amendments to Act 111 in 1974, which amendments repealed Act 111 in part without modifying the standard of review set forth in *City of Washington.* The Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1922(4), states that "in ascertaining the intention of the General Assembly ... when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." *See Weber v. Lynch,* 473 Pa. 599, 375 A.2d 1278 (1977). Thus it is evident that the legislature was satisfied with this Court's determination and the standard of review set forth in *City of Washington.* The legislature's awareness and tacit approval of the *City of Washington* standard of review is supported by the Official Source Note to section 7302 of the UAA which states that "Subsection (d) is intended to preserve without change the scope of review which presently exists over awards of arbitrators such as those appointed under [Act 111]." (The Official Source Note is, of course, not binding on this Court in construing legislation, but does serve as further indication that the legislature was aware of the existing standard of review under *City of Washington,* which had been decided eleven years prior to enactment of the UAA.)

Moreover, as Judge Doyle correctly observed in his concurring and dissenting opinion below, the respective standards of review are not the only areas where the UAA and Act 111 are inconsistent.[2] Act 111 represents a specific legislative response to the need for collective bargaining between policemen and firemen and their employers, and created an arbitration mechanism designed to meet that specific need. The legislature did not intend that the comprehensive scheme and procedures created for arbitration under Act 111 be somehow modified implicitly by the scope of review provided under section 7302 (d) of the UAA or by any of the other inconsistent provisions.

In *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.,* 461 Pa. 420, 336 A.2d 609 (1975), this Court addressed the issue of whether the Arbitration Act of 1927 was replaced or modified by the Arbitration of Claims Act of 1937 for resolving contract disputes between the Commonwealth and its contractors. In holding that the latter act did not implicitly repeal the former, we stated that "repeals of statutes by implication 'are not favored' and that, as a general rule, 'a later statute shall not be construed to ... repeal an earlier statute unless the two statutes are irreconcilable.'" *Id.,* 461 Pa. at 431, 336 A.2d at 614. We further stated that in the absence of a clear indication of legislative intent, either express or implied, that the Act of 1937 should supersede or replace the Act of 1927, "we must assume that it was the intention of the legislature that the procedures embodied in the two acts are to stand together." *Id.,* 461 Pa. at 429–30, 336 A.2d at 614.

**2.** Judge Doyle offered the following comparisons:

Compare, e.g., the procedure for the appointment of a third arbitrator on the occasion of an impasse, Section 4 of Act 111 43 P.S. § 217.4 (appointment by reference to the American Arbitration Association) and Section 7305 of the UAA, 42 Pa.C.S. § 7305, (by the Court); also compare the time constraints imposed on the arbitrators within which to make their determination, Section 4(b) of Act 111 (within thirty days after the appointment of the third arbitrator) and Section 7310 of the UAA, 42 Pa.C.S. § 7310, (within the time fixed by the agreement or if not so fixed, then as ordered by the court on the application of a party.)

502 A.2d at 268.

In the instant case, the Uniform Arbitration Act and Act 111 similarly stand together. The standard under Act 111 for reviewing arbitration awards affecting policemen and firemen and their public employers was established in 1969 by *City of Washington,* and the legislature was well aware of that standard of review when it enacted the Uniform Arbitration Act with its inconsistent standard of review. Since the latter act explicitly states that it is applicable only "where the arbitration ... is consistent with any statute regulating labor and management relations," and since the standard of review set forth in § 7302(b) is at odds with that established by *City of Washington* and Act 111, this Court rejects the argument (accepted by the lower courts) that the Uniform Arbitration Act implicitly modified and enlarged the standard of review.

■ For the foregoing reasons, we reaffirm the *City of Washington* standard of review of an arbitration award under Act 111, and the Commonwealth Court and trial court erred in their determinations that the Uniform Arbitration Act had enlarged that standard of review to permit courts to review such awards for errors of law.[3] Nevertheless, we will affirm the result reached by the lower courts because

**3.** While we did not specifically address the issue of whether the UAA superseded or modified the scope of review under Act 111, this Court has recently had occasion to consider the two statutes. In *Township of Moon, supra,* this Court reviewed an arbitration award that established a binding grievance arbitration procedure in conformity with the Uniform Arbitration Act, and we held that the arbitrators could legitimately establish such a procedure. 508 Pa. 495, at 508–509, 498 A.2d at 1312. The majority reasoned that, although Act 111 did not establish a binding grievance arbitration mechanism (as opposed to "interest" impasse arbitration), neither did it expressly preclude adoption of such mechanism, and thus, the grievance arbitration procedure awarded by the arbitrators was within their authority and was affirmed. *Id.* 508 Pa. at 507, 498 A.2d at 1310–11, citing *Chirico v. Board of Supervisors for Newton Township, supra.* The arbitration mechanism provided in the Uniform Arbitration Act was not inconsistent, for grievance arbitration purposes, with Act 111. The standard of review applied in *Township of Moon* on the issue of whether the arbitrators' award was within their powers and authority, however, was not that contained in the Uniform Arbitration Act but was, rather, the now-traditional Act 111 standard of review adopted in *City of Washington. Id.* 508 Pa. at 500, 498 A.2d at 1307.

this arbitration award was illegal and unenforceable under *City of Washington*, for the elimination of the post-retirement benefits for 1984 by the arbitrators was in "excess of the exercise of their powers." (The parties have not challenged the arbitration award on the grounds that the arbitrators lacked jurisdiction or that the proceedings were irregular, nor have they properly raised any constitutional questions. Our review of the arbitration award in the instant case under *City of Washington* is thus limited to a determination of whether the arbitrators acted in excess of the exercise of their powers.)

As then Justice Roberts wrote for a unanimous Court in *City of Washington*, "excess in exercise of powers" means that the powers of the arbitrators are derived from Act 111 and must stay within its parameters, *and additionally*, those powers must not be exercised in a manner that would require the public employer to perform an illegal act, i.e., an act that was not within the authority of the employer or that was prohibited by law.[4] As we stated in *City of Washington*:

> Whether the decision maker in an adjudicatory process has been guilty of an excess in the exercise of power *depends fundamentally on whether he has gone outside the boundaries of his authority. No adjudicatory body has unlimited discretion.* At the very least, each and

[4]. Review for errors of law is certainly not synonymous with review under *City of Washington* for whether the arbitrators acted "in excess of the exercise of their powers." As Judge Doyle cogently observed in the instant case:

> A review of some decisions of this Court decided subsequent to the Supreme Court's decision in *Washington Arbitration Case*, has led me to conclude that we have confused the standard laid down by the Supreme Court by failing to use the precise language, "questions of excess in exercise of powers," and instead utilize the term "questions of law."[3] This substitution of language *is indeed unfortunate and should be discredited.* In any event, we are, of course, in fact, bound by the pronouncements of *Washington Arbitration Case* and its progeny.

502 A.2d at 269, *and see* Commonwealth Court cases cited at 269, n. 3. We agree with Judge Doyle that the Commonwealth Court has confused the *City of Washington* standard by indiscriminately using the term "questions of law" instead of "excess in exercise of powers," and we disapprove of that substitution of language.

every adjudicator is bound by the Constitution of the United States; and most are bound by even tighter strictures.... In the instant case the adjudicatory power is an arbitration panel. Since it is a creature of the Legislature we must look to see if its powers were restricted in any way. *If they were, and if the panel went beyond the limits of its authority, then it committed an excess in the exercise of power and the tainted portions of its mandate may be reviewed and corrected.*

   .    *    *    *    *    *    *

In spite of the fact that neither the relevant constitutional provision nor the enabling legislation clearly delineates the power of the arbitration panels, *we are of the opinion that such panels may not mandate that a governing body carry out an illegal act.* We reach this result by quite frankly reading into the enabling legislation *the requirement that the scope of the submission to the arbitrators be limited to conflicts over legitimate terms and conditions of employment.* Were this not so, virtually any issue could be submitted to the arbitrators under the guise of a labor conflict. Further, we fully realize that there will be issues that would be fully legitimate in the context of a private sector labor dispute which will not be legitimate in the context of a public sector labor dispute. Public employers are in many respects more limited in what they may do vis-a-vis their employees, and those limitations must be maintained. *The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily.*

436 Pa. at 174–77, 259 A.2d at 441–42 (emphasis added).

■ Thus an arbitration award may be in excess of the exercise of the arbitrators' powers if it requires the public employer to perform an act that it is prohibited by law from performing, *Guthrie v. Borough of Wilkinsburg, supra,* or if it does not involve legitimate terms or conditions of

employment. *City of Washington, supra.*[5] An error of law, therefore, which does not so exceed the powers and authority of the arbitrators (such as a misinterpretation or misapplication of law affecting an arbitrable term or condition of employment that did not require the doing of a prohibited act by the public employer) is not alone grounds for reversal of an Act 111 arbitration award premised upon that error.

With these standards in mind, we review the arbitration award herein, i.e. the elimination of post-retirement hospital and medical benefits for 1984.

Upper Providence Township is a home rule community, having adopted a home rule charter under the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 184, *as amended*, 53 P.S. §§ 1–101 through 1–1309. Its powers are derived from its charter which must conform with the Home Rule Act. Section 302 of the Home Rule Act sets forth the "Limitation on municipal powers" for municipalities chartered under its auspices. Section 302(b) provides, in relevant part, that "No municipality shall (iii) be given the power to diminish the rights or privileges of any former municipal employe entitled to benefits or any present municipal employe in his pension or retirement system...." 53 P.S. § 1–302(b)(iii).

The arbitrators' award eliminating post-retirement hospital and medical benefits for 1984 violated section 302 of the Home Rule Act as it constituted an illegal diminishment of retirement benefits to former and present employees. The stipulation of the parties narrowly defined the issue and the benefit in question, namely the illegality or legality of the "Medical after Retirement" provision which

---

5. Additionally, three members of this Court have expressed the view that an arbitration panel "does not have a free hand in designing a comprehensive agreement but must limit itself to those issues in dispute," and "any decisions beyond those issues submitted is in excess of the [panel's] authority." *Lower Merion Fraternal Order of Police v. Lower Merion Township, supra,* at 511 Pa. 197, 512 A.2d 617 (Opinion In Support of Reversal per Larsen, J., joined by Hutchinson and Papadakos, JJ.; Opinion In Support of Affirmance In Part and Reversal In Part per Zappala, J., joined by Flaherty, J., with Nix, C.J., concurring in that disposition).

provided: "The full hospital and medical benefits in effect at the time of retirement ... to continue annually after retirement until death." The arbitration award *discontinued* for 1984 the hospital and medical benefits after retirement until death, and thus "diminish[ed] the rights or privileges of any former municipal employe entitled to benefits or any present municipal employe in his pension or retirement system." Since the Township was prohibited by the Home Rule Act from voluntarily eliminating the post-retirement hospital and medical benefits for present and former employees, the award of the arbitrators eliminating those benefits for 1984 was illegal and thus in excess of the exercise of their powers.[6] While we disapprove of their reasoning, the lower courts were correct, therefore, in reversing the arbitration award to the extent that it eliminated post-retirement hospital and medical benefits for 1984.[7]

For the foregoing reasons, we affirm the order of the Commonwealth Court affirming the order of the Court of Common Pleas of Delaware County which reversed item number 3 of the arbitration award.

6. While the FOP did not initially challenge the arbitration award on constitutional grounds, elimination of these benefits in 1984 would also pose serious constitutional problems. *See Association of Pennsylvania State College and University Faculties v. State System of Higher Education,* 505 Pa. 369, 479 A.2d 962 (1984) (amendment to retirement code increasing rate of employees' contribution unconstitutionally impaired the contract rights of all existing members of the retirement system), *and Catania v. State Employees' Retirement Board,* 498 Pa. 684, 450 A.2d 1342 (1982) (Opinions in Support of the Granting of Summary Judgment per Nix, Larsen and Flaherty, JJ.).

7. In *Lower Merion Fraternal Order of Police Lodge Number Twenty-Eight v. Township of Lower Merion,* 511 Pa. 186, 512 A.2d 612 (1987), two members of this Court would have held that the Township of Lower Merion was prohibited from providing post-retirement medical benefits to retired employees. (Opinion In Support of Affirmance In Part and Reversal In Part per Zappala, J., joined by Flaherty, J., with Nix, C.J. concurring in that disposition; Larsen, J. wrote Opinion in Support of Reversal, joined by Hutchinson and Papadakos, JJ., which would have upheld the arbitration award of post-retirement medical benefits). The *Lower Merion* decision is distinguishable because it involved the powers and limitations of a municipality under the First Class Township Code, which differ markedly from those of a home rule community. Additionally, *Lower Merion* has been reargued before this Court on January 29, 1987.