504

Eugene Sauers, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Bucks County Board of Assistance, Respondent.

Submitted on Briefs June 6, 1983, to Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Clyde W. Waite, Stief, Luber, Waite, Gross & Sagoskin,* for petitioner.

*Phillip B. Rosenthal,* Assistant Counsel, for respondent.

OPINION BY JUDGE ROGERS, August 23, 1983:

Eugene Sauers, a regular status member of the Commonwealth's classified service attached to the Bucks County Board of Assistance an administrative adjunct of the Department of Public Welfare, has filed a petition for review of the State Civil Service Commission's dismissal of his appeal from a performance evaluation report made by his supervisor, the Executive Director of the County Board of Assistance.

Sauers, whose position in the service was that of Income Maintenance Manager, was the person in charge of one of the two district welfare offices maintained by the Bucks County Board of Assistance. The chief executive officer and administrator of the County Board from 1975 onward was its Executive Director, Louis Rublin. For several years before April, 1980, Sauers was directly supervised by one Marilyn Alexander who gave him excellent ratings. These ratings were reviewed by Rublin without notable comment except in the instance of the last evaluation prepared by Alexander in May, 1981, concerning which Rublin as a reviewer noted that he was not necessarily in agreement with the excellent report.

Sauers came under the direct supervision of Executive Director Rublin in early 1981. In July, 1981, Rublin made an annual evaluation of Sauers' work performance covering the period August 1, 1980 through July 10, 1981. Rublin gave Sauers very good or good ratings as to the quality of his work, his dependability, his initiative, his handling of individual cases and for the results of the operations of his office. He gave Sauers fair ratings on the quality of his work, his relationships with people, his analytical ability, and his ability as a supervisor. Rublin's overall evaluation of Sauers' performance was high fair. Rublin attached to the evaluation nine pages, single spaced, describing instances of inadequate performance of duty

by Sauers with reference to the specific qualities required to be evaluated and making suggestions for improvement.

At this point, it seems necessary again to review the provisions of the Civil Service Act[1] relating to appeals of public employees to the State Civil Service Commission from personnel actions by their appointing authorities. Section 951(a), 71 P.S. §741.951(a) gives a regular employee the right to appeal a permanent separation, a suspension for a cause, a furlough or a demotion on the ground that the action was taken in violation of the Act; that is, without good or just cause, in the case of separation and suspension (Sections 807 or 803), improperly ordered in the case of furlough (Section 802), or not founded on unsatisfactory performance in the case of demotion (Section 706). Because the personnel action Sauers complains of is a performance evaluation, not a separation, suspension, furlough or demotion, he was not entitled to appeal under Section 905(a) and obtain a full review of the propriety of the evaluation.

Section 905.1 of the Act, 71 P.S. §741.905a provides that no Commonwealth officer or employee shall discriminate against any person in any personnel action with respect to the classified service "because of political or religious opinions or affiliations. because of labor union affiliations or because of race, national origin or other non-merit factors" and Section 951(b), 71 P.S. §741.951(b), gives persons who allege violations of Section 905.1—that is, that an officer or employee has discriminated against him because of his political or religious opinions or affiliations, his union affiliations or race, national origin, or other non-merit factors—the right to appeal any personnel action on

---

[1] Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.1.

this ground, including actions not appealable under 951(a). However, the only issue in a 951(a) appeal, alleging a violation of 905.1, is that of whether a Commonwealth officer or employee has discriminated against the appellant in a personnel action because of any of the proscribed factors; and the burden or proving that such has occurred is upon the appellant. *Gibson v. Bureau of Child Welfare*, 61 Pa. Commonwealth Ct. 446, 434 A.2d 213 (1981).

Sauers' appeal to the Commission was therefore of necessity taken under 951(b) and based on 905.1. His contention was that Rublin's evaluation of his performance made in July, 1981, markedly lower than evaluations he had been accustomed to receive from his previous direct supervisor, was an act of discrimination against him because of "other non-merit factors." After a hearing, the State Civil Service Commission concluded that Sauers had failed to carry his burden of proving that he was the victim of discrimination because of non-merit factors. We agree with this conclusion.

It is not necessary to describe the record evidence in great detail. It suffices to say that the only subject of the Commission's hearing was that of the merit of Sauers' performance of his work during the period covered by the evaluation complained of. The clearest impression left by the record as a whole is that Sauers had formed, either before Rublin became his director supervisor or soon thereafter, a low regard for Rublin's executive and administrative abilities. This he exhibited by inveighing against, complaining of, and failing to support, Rublin's administrative decisions. This conduct reached the point of insubordination when Sauers composed and sent memoranda to Rublin with copies to the County Board of Assistance. One of these, dated April 2, 1981, sent to Rublin with copies not only for the County Board of Assistance but also to

the bulletin board of Sauers' district office,[2] on the subject of the transfer of an employee from Sauers' district office to the office at Bristol, presents the tone of Sauers' expressions of disagreement. It is consistent with the tone of his testimony at the Commission's hearing.

> To: Louis Rublin—Executive Director
> From: E.J. Sauers—Income Maintenance Manager 1 District 2
> Your recent decision to reduce the medical/food stamp unit by one member and send that position to Bristol based on the results of the recently concluded matrix study meets with my very strong disapproval.
>
> ....
>
> This theory of having those who do more do it with less and those who do least do it with more can only lead to apathy and a complete loss of pride in accomplishments. This applies to staff in *both* offices.
>
> The matrix was only devised as a guideline for us to follow and not a mandate for distribution of staff. It is not an excuse to be remiss in applying good managerial principles.
>
> I have repeatedly asked you to question why caseloads and error rates were high first and foremost and when the reason for that was clarified and rectified *then* and only then would it be appropriate to make sure everything was divided in an equitable manner.
>
> The idea of punishing those who do and rewarding those who do not is extremly [sic] unimaginative, unprofessional, insensitive and a very poor managerial concept.

------

[2] At the Commission's hearing Sauers testified that in fact he did not cause this memorandum to be posted on the bulletin board of his district office.

....

When I asked you to at least consider having the position reallocated to an Income Maintenance Unit Clerk, as was previously done in Bristol, I was brushed off with a lot of double talk and excuses.

....

In conclusion I would like to state that District 02 has been performing in an above standard manner for the past several years but continues to be ignored and forgotten as if we did not exist.

It almost seems like there is a concentrated effort to break down the efficiency of this office either by design or as a punishment for excelling.

Other matters, in addition to this one-person transfer on which Sauers' quite as truculently disagreed, or failed to cooperate with Rublin, concerned a Rublin directive regarding employee parking, the matter of distribution of mail, a Rublin suggestion of reading matter to be distributed to supervisory personnel of Sauers' office and difference over whether Rublin had or had not announced an agency policy with respect to a memo received from the Department of Public Welfare concerning the registration of WIN clients at a time before Sauers made statements on the subject which Rublin believed were insubordinate.

The record contains no direct evidence that Rublin's evaluation of Sauers was based on anything other than his conviction that Sauers' performance was flawed by his unwillingness to accept Rublin's authority. Sauers has not directed our attention to any direct evidence that Rublin was motivated in the evaluation which the commission disregarded by a non-merit factor. His case seems to be that the commission should have inferred, based solely on the significant difference

between his earlier ratings and the Rublin evaluation, that the latter was based on non-merit factors rather than on Rublin's true evaluation of his work performance. If the commission had overturned the evaluation on such an inference, its action would, on this record, be required to be set aside as being without factual support.

The appellant also contends that his expressions of disagreement with Rublin's administrative direction was speech protected by the First Amendment. Therefore, he says, Rublin's action of depressing his evaluation on their account was a violation of this constitutional right because it was intended to punish him for exercising protected speech. It was, therefore, a personnel action based on a non-merit factor.

Not all speech by a public employee concerning the workplace is protected but only that which addresses matters of public concern. A late exposition of the subject is *Connick v. Myers*,     U.S.    , 75 L.Ed 2d 708 (1983), upholding the discharge by a district attorney of an assistant district attorney who, displeased with a transfer, circulated a questionnaire soliciting the views of other employees concerning office transfer policy, office morale, the level of confidence in their superiors and whether they felt pressured to work in political campaigns. The Supreme Court held that the inquiry into the protected status of speech is one of law, not fact, and that the task of courts in cases involving public employees:

> ... is to seek "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." [Pickering v. Board of Education, 391 U.S. 563 (1978)] at 568.

....

When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.

. . . .

To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

. . . .

U.S. at    , 75 L.Ed 2d at 717, 719, 721.

Surely, Sauers' expressions and actions critical of Rublin's decisions on parking arrangements, the transfer of an employee, the distribution of mail, a suggestion of reading material for Sauers' subordinates and a dispute over whether Rublin had or had not established agency policy concerning the registration of WIN clients cannot fairly be considered as relating to any matter of political, social, or other concern to the community.

Order affirmed.

### ORDER

AND Now, this 23rd day of August, 1983, the order of the State Civil Service Commission made June 15, 1982, is affirmed.