504 A.2d 952

Thomas Adamovich, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Embreeville State Hospital, Respondent.

· Argued December 9, 1985, before Judges DOYLE and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Hudson L. Voltz, Voltz and Czaplicki Associates,* for petitioner.

*James S. Marshall,* Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, February 6, 1986:

This is an appeal by Thomas Adamovich (Appellant) from an order of the State Civil Service Commission (Commission) sustaining the action of the Department of Public Welfare, Embreeville State Hospital (Appointing Authority) in removing Appellant from his position as Institutional Business Manager III, regular status, on specific charges of continued unsatisfactory work performance.

The Commission made numerous findings relating to both Appellant's duties and his deficiencies. With respect to the former the Commission determined that "appellant was responsible for the planning, organizing, directing, and controlling of all of the administrative support services and all of the fiscal budgetary, and purchasing activities for the appointing authority." Support services include "personnel, maintenance, housekeeping, laundry, warehousing, security, labor relations, and accounting." With respect to the latter the Commission found that Appellant, *inter alia,* delegated responsibility for analyzing the budget expenditures which resulted in the Appointing Authority's having to reallocate funds to maintain its operations, failed to submit a plan to assure adequate linen for the Appointing Authority's patients, failed to submit requested reports and submitted other reports which were lacking in substance, failed to monitor and evaluate a contract with a cockroach exter-

minating firm, and failed to supply adequate toiletries for patient use. In addition, the Commission determined that Appellant stated to the Appointing Authority's Director of Operations Review that the Appointing Authority's housekeeping budget was high "because eighty per cent of the staff here is niggers." With respect to this particular remark the Commission went on to find:

> [A]ppellant's statement was made for the purpose of excusing his own inept performance and deflecting criticism upon minority employes under his supervision. . . . We note that appellant is in a high-level management position and can be expected to conduct himself with tact and dignity. His comment was not only improper, but inexcusable, and constitutes just cause for his removal.

Based upon these findings the Commission ruled that Appellant had been removed for just cause pursuant to Section 807 of the Civil Service Act[1] (Act), 71 P.S. §741.807. We note that an employee is properly removed for just cause if the removal is based upon job-related criteria and touches in a logical and rational manner upon competency and ability. *Konick Appeal,* 34 Pa. Commonwealth Ct. 502, 383 A.2d 1002 (1978). In addition, the Commission ruled that the Appointing Authority did not discriminate against Appellant in violation of Section 905.1 of the Act,[2] 71 P.S. §741.905 (a).

On appeal Appellant asserts three issues for our consideration. We shall examine them seriatim keeping in mind that our scope of review of a Commission order is limited to determining whether Appellant's

---

[1] Act of August 5, 1941, P.L. 752, *as amended.*

[2] Section 905.1 was added by Section 25 of the Act of August 27, 1963, P.L. 1257.

constitutional rights have been violated, whether an error of law has been committed, and whether the necessary findings of fact are supported by substantial evidence on the record. *Cotter v. State Civil Service Commission,* 13 Pa. Commonwealth Ct. 49, 318 A.2d 390 (1974). Appellant does not directly attack the findings of the Commission as being unsupported by substantial evidence. Rather, he asserts that because the Commission found that the Appointing Authority's purchasing office (over which Appellant had supervisory authority) was understaffed, it could not properly conclude that Appellant was capable of performing all of the duties assigned to him. To this end, Appellant relies upon *Gibbs v. Civil Service Commission,* 3 Pa. Commonwealth Ct. 230, 281 A.2d 170 (1971) for the proposition that an employee must perform only those duties that *reasonably* can be expected of him. In *Gibbs* this Court noted that there was undisputed testimony that the employee, a Beautician I, was given an unreasonable workload with respect to both the number of hospital patients she was to service and the time in which she was to complete those services. We thus found in *Gibbs* that the appointing authority had failed to establish that the employee had unsatisfactorily performed the duties reasonably expected of her, and so held that just cause for her removal had not been demonstrated.

In the instant case, however, the Commission found that the staffing shortage was anticipated and further found that although Appellant may have had to perform extra duties, he failed to effectively plan for the shortage. In addition the Commission stated:

> [W]hile appellant's responsibilities may have increased because of the shortage of employes in the purchasing office, this was not an adequate excuse for appellant's numerous work-

related failures. While the shortage in the purchasing office may serve to explain a delay in acquiring supplies, it would not explain a total failure to do so, nor would it excuse other shortcomings in appellant's performance which were unrelated to the acquiring of supplies.

In light of the numerous deficiencies the Commission found which were unrelated to procurement, *i.e.*, Appellant's racially derogatory remark, his failure to submit reports, his failure to submit a proposal on the advantages and disadvantages of implementing a different telephone system, his failure to monitor the cockroach extermination contract, and his failure to provide an adequate cleaning staff, the Commission's reasoning in rejecting Appellant's "understaffing defense" is sound. Accordingly, we hold that substantial evidence exists to support the Commission's determination that understaffing did not totally excuse Appellant's poor performance and thus reject Appellant's assertion that *Gibbs* controls here.

Appellant next asserts that his termination was procedurally improper. Procedural impropriety may be appealed to the Commission only under Section 951(b) of the Act,[3] 71 P.S 741.951(b), and requires an allegation of discrimination; the burden of proof under Section 951(b) rests with Appellant. 4 Pa. Code §105.16(a); *see also Silverman v. Department of Education*, 70 Pa. Commonwealth Ct. 444, 454 A.2d 185 (1982). Specifically Appellant contends that the Appointing Authority in removing him did not follow the procedures set forth in Management Directive 505.7 and in the Appointing Authority's personnel manual.

With respect to the management directive, the compliance with Section 36.15 is what is in issue. This Section states:

---

[3] Section 951 was added by Section 27 of the Act of August 27, 1963, P.L. 1257.

> A thorough and objective investigation of facts and circumstances surrounding an incident giving rise to discipline shall be conducted prior to the imposition of discipline.

This Court has previously held that management directives such as the instant one have the force and effect of law. *Reneski v. Department of Public Welfare,* 84 Pa. Commonwealth Ct. 226, 479 A.2d 652 (1984). Accordingly, compliance with the above directive, which uses the mandatory language "shall", is required. The record indicates that Appellant's immediate superior conducted the investigation, but this witness admitted that it was not a "formalized" investigation. We find no requirement that it be so. Indeed, the argument advanced by the Appointing Authority in its brief is persuasive:

> One reasonably may infer from Section 36.15 that its goal is to insure that managers have correct and accurate facts before deciding to discipline employes. In recognition of the fact that in many instances managers may not have direct contact with some of their employes, a thorough and objective investigation into the facts must be conducted by the managers in order to obtain accurate information before meting out discipline.
>
> The present case, however, is markedly different from those instances where managers who discipline employes are removed from the activities of the employes. In the present case, the person primarily responsible for the decision to remove [Appellant] from employment is [Appellant's immediate superior]. Appointing Authority brief, page 25.

It is apparent from the record that Appellant's superior *knew* first hand of Appellant's deficiencies and to

require a "formal" investigation in such a case is to do nothing more than impose additional red tape on the disciplinary process.

We note also that our resolution of this matter comports with the recent United States Supreme Court decision in *Cleveland Board of Education v. Loudermill,* U.S. , 105 S. Ct. 1487 (1985). In *Loudermill* a discharged civil servant was provided with no pretermination opportunity to respond, although an Ohio statute granted him full due process hearing subsequent to his removal. The High Court, in balancing the employee's interest in retaining employment with the government's interest in expeditiously removing an unsatisfactory employee, held that a pretermination hearing *is* necessary but that it need be only "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at , 105 S. Ct. at 1495. The *Loudermill* Court also stated, "the pretermination hearing need not definitely resolve the propriety of the discharge." *Id.* at , 105 S. Ct. at 1495. Thus, all the employee is entitled to at this stage of the proceedings, according to *Loudermill,* is notice of the charges, an explanation of the employer's evidence and an opportunity to respond and present his side of the story in the informal pretermination hearing. Appellant here has not alleged that these basic requirements were unmet. Therefore, we do not find the pretermination procedures followed by the Appointing Authority to be constitutionally infirm.

Appellant also asserts procedural impropriety in the Appointing Authority's alleged failure to follow the predisciplinary investigative process appearing in Section 7174.2(a)(1) of its personnel manual. This Section states:

1. Investigation of Incident

A thorough and objective investigation of the facts and circumstances surrounding an incident which raises the issue of discipline prior to the imposition of discipline.

The following must be determined:

(a) Did the employe in fact disobey an order from the supervisor or manager or violate a work rule, regulation, or reasonable standard of conduct?

(b) Has the investigation of the incident been conducted fairly and objectively?

Note: The manager investigating the incident cannot also be a witness.

(c) Has the manager obtained a preponderance of the evidence or proof that the employe is guilty of the offense (by credible testimony or documentary evidence)?

The language immediately preceding this Section, however, makes it clear that this policy is advisory and for the benefit of assisting management only. It reads:

The following *guidelines* have been developed to serve as a check-list for determining whether due process has been observed and whether just cause has been established prior to imposition of any disciplinary action. A negative response to any of the questions posed under the guidelines will serve as notification to the appropriate management officials that further evaluation in the case is necessary. (Emphasis added.)

It is clear from this language that Section 7174.2 (A)(1) bestows no independent due process rights

upon an employee who is the subject of disciplinary investigation.[4] Appellant contends and it is not denied that his immediate superior who conducted the informal investigation, *was* a witness to the activities. But Appellant's immediate superior was the superintendent of the hospital and, hence, the obvious person to conduct the investigation. Certainly delegation of this matter to a subordinate of Appellant's would be inappropriate. Additionally it must be kept in mind that what Appellant's superior was doing was merely making a preliminary determination as to whether punishment should be imposed. The propriety of that decision is subject to a full due process hearing before the Commission, which, upon a finding that the initial determination was in error, has the power to order a reinstatement and full backpay. *See* Section 951(a) of the Act, 71 P.S. §741.951(a). We believe that the procedures employed here afforded Appellant sufficient due process rights under the dictates of *Loudermill* and hence reject Appellant's constitutional argument.

Appellant also asserts procedural impropriety in the Appointing Authority's failure to issue him an annual performance evaluation report (PER) in February of 1983. Appellant was, however, issued an interim report in December of 1982. The interim report did serve to put Appellant on notice of his poor performance. But the matter does not end here, because Appellant, as the Commission recognized, is en-

---

[4] We reject Appellant's argument that under Section 206 of the Act, 71 P.S. §741.206, the Commission is empowered to enforce the provisions of this manual. Section 206 directs the Commission to administer the rules made under *its own act*. Even if the personnel manual Section in question were a regulation, the Department of Public Welfare would have promulgated it under *its own* statutory authority, not the Commission's.

titled under the Commission's regulation 99.13[5] to receive an annual report. The Commission however reasoned, and we agree, that this matter was separate from the removal action. The interim report (which the Commission maintains is *not* appealable) unlike an annual PER which clearly is appealable, *see e.g., Sauers v. Bucks County Board of Assistance,* 76 Pa. Commonwealth Ct. 504, 464 A.2d 635 (1983), was not relied upon by the Appointing Authority to prove its case. Thus, the removal action was not tainted by the failure to issue the annual PER. Had Appellant desired to enforce his right to receive an annual PER he should have prosecuted that matter independently.[6]

As his final basis for appeal Appellant asserts that the Commission erred in refusing to find that he had been discriminated against. Specifically, Appellant maintains that another employee who supervised client care operation received a "very good" PER rating while Appellant's PER rating was "poor" and that the other employee received this rating despite the fact that an equal number of deficiencies existed in her area and Appellant's area. With respect to this matter the Commission determined that the deficiencies in Appellant's area were "correctable because the appointing authority had the available resources to remedy the problem" whereas the deficiencies in

---

[5] 4 Pa. Code §99.13. Subsequent to the Commission's disposition of the instant case this rule was amended. The amended regulation, which became effective March 30, 1985, appears at 15 Pa. B. 1151 (1985). The proposed textual changes appear at 14 Pa. B. 2842 (1984). Because the subject of this regulation is a separate issue from the removal action, the changes to the rule are irrelevant for our purposes here.

[6] We need not decide whether the remedy for this failure is an appeal to the Commission pursuant to Section 905.1 from a refusal to issue the annual PER or a mandamus action against the Commonwealth in this Court inasmuch as that issue is not before us now.

the client care area related to understaffing and could not be attributed to the other employee. While, as noted earlier, the Commission did find that Appellant was understaffed in the purchasing office, it is clear that many of his deficiencies related to problems other than this. In light of the Commission's substantially supported findings that Appellant's poor performance was not based entirely on understaffing in the purchasing office, it is apparent that Appellant failed to sustain his burden to prove discrimination. Accordingly, the order of the Commission is affirmed.

ORDER

Now, February 6, 1986, the order of the State Civil Service Commission dated May 22, 1984, Appeal No. 4509 is hereby affirmed.