559 A.2d 606

**Yolanda G. KACHMAR, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, WOODVILLE STATE HOSPITAL, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 2, 1989.

Decided June 2, 1989.

Jonathan B. Robison, Lee R. Golden and Dorothy E. Voelker, Robison, Golden & Voelker, Pittsburgh, for petitioner.

John Kane, Chief Counsel, Harrisburg, and Jeffrey P. Schmoyer, Asst. Counsel, Canonsburg, for respondent.

Before DOYLE, PALLADINO and SMITH, JJ.

DOYLE, Judge.

This is an appeal by Yolanda G. Kachmar from an order of the State Civil Service Commission which affirmed Kachmar's removal from her position as Psychiatric Nurse Instructor I, regular status, with the Department of Public Welfare, Woodville State Hospital (Appointing Authority).

The Commission found that by letter dated October 15, 1987 Kachmar had been removed from her position effective at the close of business on October 16, 1987 on a charge of unacceptable and inappropriate conduct. As a Psychiatric Nurse I Kachmar's duties included conducting orientation programs for newly employed nurses. During the course of such an orientation program in September of 1987 Kachmar made numerous inappropriate comments to the orientees including, as the Commission found:

A. That the state had "f—ed her (Kachmar) over."

B. That a staff psychiatrist had had sexual relations with patients.

C. That the chief administrator was a "raggedy woman."

D. That all staff aides were lazy.

E. That one-half the administration should be fired.

F. That orientees "turn their heads like everybody else" when confronted with patients engaged in sexual activity.

The Commission further found that Kachmar had previously been instructed by her supervisor to improve her negative attitude during orientation. It specifically found credible the unimpeached testimony of five psychiatric nurses who had participated in the orientation program. The Commission determined that their testimony established that Kachmar had in fact made the charged statements. In addition, the Commission indicated that it was particularly disturbed over Kachmar's statement directing orientees to "turn their head like everybody else" when confronted with patients who were engaging in sexual activities. The Commission noted that such advice is directly contrary to the Appointing Authority's policy and further noted the extremely sensitive position held by Kachmar who was one of the first institutional professionals to interact with new employees. The Commission thus determined that Kachmar's comments were deplorable and constituted just cause for her removal. It further held that there had been no violation of the Civil Service Act's prohibition against discrimination.[1] Therefore, it upheld the removal action and this appeal ensued.

On appeal here Kachmar raises one issue for our consideration, that is, whether the Appointing Authority may ignore an alleged "management directive" proscribing a maximum discipline less than removal. Our scope of review over the Commission's order is, of course, limited to determining whether there has been a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Credibility matters are within the Commission's discretion to determine. *West Chester State College v. Stein* 72 Pa. Commonwealth Ct. 561, 457 A.2d 176 (1983).

1. *See* Section 905.1 of the Civil Service Act, Act of August 5, 1941 P.L. 752, *as amended,* 71 P.S. § 741.905a. Section 905.1 was added to the Civil Service Act by Section 25 of the Act of August 27, 1963 P.L. 1257.

The thrust of Kachmar's appeal is premised upon her notion that the Appointing Authority should have imposed a lesser form of discipline under its own personnel manual. It is Kachmar's argument that those portions of the manual dealing with discipline [2] constitute management directives which have the force and effect of law and must, accordingly, be strictly followed. *See Reneski v. Department of Public Welfare*, 84 Pa.Commonwealth Ct. 226, 479 A.2d 652 (1984).

In *Adamovich v. Department of Public Welfare*, 95 Pa. Commonwealth Ct. 22, 504 A.2d 952 (1986), we rejected the argument that portions of the personnel manual which clearly state, as do those at issue here, that they are *guidelines* bestow any independent rights on the employee. We, thus, do not view the instant provisions of the manual as being management directives containing the force and effect of law.[3] Even assuming, however, that the cited manual sections do constitute management directives, the inquiry would be whether the proper section of the manual was applied in this case. Essentially, what the manual does is present various descriptions of offenses, the elements of substantiation required for those offenses, matters which should be considered as mitigating or extenuating circumstances, and appropriate punishment for first offenses, second offenses and third offenses, taking into consideration whether one is a probationary or regular status employee. Kachmar maintains that the charges leveled against her fall into the category of "unsatisfactory performance/capable employee with attitudinal problems" or "unsatisfactory performance/deteriorating performance in a once capable employee." The penalties provided for violations of those portions of the manual for first offenses of regular status

2. The "tables of maximum disciplinary/corrective action which may be imposed" are contained in Section 7174 of the Appointing Authority's personnel manual.

3. We do not hold that no portion of the personnel manual could not be a management directive. The manual may very well contain management directives. Our holding is limited to Section 7174 of the manual.

employees are oral warnings. Kachmar also argues that even more serious offenses, such as insubordination or sleeping on duty, merit, under the personnel manual, maximum first offense penalties of only a letter of reprimand or a three day suspension respectively.

The Appointing Authority, on the other hand, maintains that Kachmar's conduct falls more closely under charges such as "gross insubordination," "failure to follow general instructions or procedures" or "making false statements which are slanderous or defamatory in regard to other employees or Commonwealth officials." It is our view that the charged conduct falls most closely under failure to follow general instructions or procedures. The Appointing Authority's personnel manual provides that the elements of substantiation required for such an offense are employee awareness or employee's reasonable awareness of the instructions or procedures and failure to comply with them. Matters to be considered, according to the manual include the length and nature of the employee's service, the extent or degree of injury caused to patients, co-workers, residents, etc., the employee's understanding of the instructions and previous training, the circumstances surrounding the incident, the employee's explanation and the employee's level of responsibility. In this instance, the Commission found that Kachmar was one of the first individuals with whom new employees met, that co-workers were shocked by her statements and that she had previously been counseled because of ongoing attitudinal problems. Moreover, it is apparent to this Court that Kachmar's actions were not merely negligent, *but willful,* and contained a degree of deliberateness which does not constitute an element of the unsatisfactory performance offenses under which she seeks to place her conduct. And, inasmuch as the Appointing Authority's manual provides for the possibility of discharge for a first offense of failure to follow general instructions or procedures, we would find no error in the Appointing Authority's imposition of this penalty.

The sole remaining question then is whether the Commission properly determined that just cause existed for

Kachmar's removal. It is, of course, well settled that no regular status state civil servant may be removed from employment except for just cause. Section 807 of the Civil Service Act, 71 P.S. § 741.807. Just cause has been interpreted to mean that a removal action must be taken for reasons related to the employee's job performance and which touch in some rational and logical manner upon the employee's competency and ability. *Doerr v. Pennsylvania Liquor Control Board*, 88 Pa. Commonwealth Ct. 610, 491 A.2d 299 (1985). In this instance, the Commission specifically found that Kachmar's job was to orient new employees, that she advised those employees to ignore policy violations, and that she made negative statements about the Appointing Authority and members of its staff. Certainly her conduct went to the very essence of her job performance and thus, clearly, the Commission was correct in determining that there existed just cause for removal.

Based upon the foregoing opinion, the order of the Commission is affirmed.

## ORDER

NOW, June 2, 1989, the order of the State Civil Service Commission in the above-captioned matter is hereby affirmed.