587 A.2d 860

**CITY OF PHILADELPHIA, Appellant,**

**v.**

**FRATERNAL ORDER OF POLICE, LODGE NO. 5 and Marvin Pittman, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 1990.

Decided Feb. 27, 1991.

Steven K. Ludwig, Deputy City Sol., with him, Charisse R. Lillie, City Sol., Philadelphia, for appellant.

Anthony J. Molloy, Jr., Molloy & McGill, Philadelphia, for appellees.

Before COLINS and SMITH, JJ., and BARBIERI, Senior Judge.

COLINS, Judge.

The City of Philadelphia (City) appeals an order of the Court of Common Pleas (trial court) vacating an arbitration award and reinstating police officer Marvin Pittman (Pittman) with full and complete back pay. Pittman was terminated for associating with individuals engaged in unlawful activity, for his involvement in a scheme to sell driver licenses to illegal aliens, and for failing to cooperate in a departmental investigation of the scam. The arbitrator concluded that Pittman was terminated for just cause and dismissed Pittman's grievance. However, the trial court found that Pittman was not afforded procedural due process and vacated the arbitrator's award. We reverse the trial court's order.

On October 27, 1987, Pittman was visited at his home by members of the Police Department Ethics and Accountability Division (EAD), a U.S. Immigration and Naturalization Service (INS) representative, and a member of the State Police. According to the trial court, law enforcement officials went to Pittman's house to serve a subpoena. The arbitrator's opinion states that this visit was a part of the investigation of the driver licenses scam. During this October 27, 1987 interview, the enforcement officers informed Pittman that he was the subject of a criminal investigation regarding the sale of driver licenses. He was also informed that if he cooperated, he would not be fired. Additionally, at this time, police officials described the evidence collected

against Pittman. As a result of this meeting, on November 19, 1987, Pittman was suspended from the police force for thirty days and ordered to appear before the EAD and answer questions related to his participation in the license sale scam. Pittman refused to cooperate and stated that he had no knowledge of the activities in question. Therefore, on December 9, 1987, Pittman received a formal Notice of Intention to Dismiss and was formally dismissed on December 18, 1987.[1]

The first issue which we will review in this decision pertains to whether the trial court made its decision

---

1. The Notice of Intent to Dismiss stated:

   CONDUCT UNBECOMING AN OFFICER 1.25 & 1.75: In that, on or about 10–24–87, you did give your home telephone number to one G—, G—, PPN 3633138, for the purpose of future communication, and did at that time possess the knowledge that G— had been arrested for illegal procurement of driver's license applications. Further, on or about 11–5–87, one J— R— R—, PPN 3436192, while testifying in United States District Court, stated that you registered your private automobile, A 1986 Toyota, Pa Lic 3NJY–606, VIN 3JT2AW15COG0086117, at his address, —, Yeadon, PA 19050.

   Additionally, during a period of time between 1984 and 1985, pursuant to an ongoing scheme of conduct, you did conspire with one Cecil R— to sell driver's license applications, and did in fact, during that period, sell approximately twenty (20) such applications.

   ARTICLE I–CONDUCT UNBECOMING AN OFFICER

   SECTION 1.11 Failure to cooperate fully in a departmental administrative investigation.

   SPECIFICATION I

   On October 27, 1987, you were interviewed at your residence, 1720 Moore Street. At this time, you were told of your involvement in the procuring of driver license applications along with Cecil R— by Ethics Accountability Division personnel. You stated that you did not want to cooperate at all.

   ARTICLE I—CONDUCT UNBECOMING AN OFFICER

   SECTION 1.12 Making a false statement in response to an official department investigation.

   SPECIFICATION I

   On October 27, 1987, you were interviewed at your residence, 1720 Moore Street. At this time, you were told of your involvement in procuring of driver license applications along with Cecil R— by Ethics Accountability Division personnel. You stated that you did not know anything about the case.

   The foregoing course of conduct demonstrates that you have little or no regard for your responsibility as a member of the Philadelphia Police Department.

within the proper scope of review. The trial court held that the appropriate standard of review was the essence test as outlined in Section 7302(d) of the Uniform Arbitration Act (Act), 42 Pa. C.S. § 7302(d). The trial court stated that an arbitration award should not be overturned if it draws its essence from the Collective Bargaining Agreement. Furthermore, the trial court cited the case of *Community College of Beaver County v. Society of the Faculty*, 473 Pa. 576, 375 A.2d 1267 (1977)[2] and stated that the Uniform Arbitration Act "provides for modification or correction of an award where it 'is against the law, and is such that had it been the verdict of a jury, the court would have entered a different or other judgment notwithstanding the verdict.' " The trial court erred when it used the Uniform Arbitration Act's test as its standard of review. Police officers' arbitration rights arise from the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1—217.10 (Act 111). The Supreme Court in the case of *Appeal of Upper Providence Police Delaware County Lodge No. 27 Fraternal Order of Police*, 514 Pa. 501, 526 A.2d 315 (1987) explicitly rejected the expansion of the narrow certiorari standard of review in Act 111 police and fire personnel cases. The scope of review under Act 111 is limited to questions concerning the jurisdiction of the arbitrators, the regularity of the proceedings, excesses in the exercise of the arbitrator's powers and constitutional questions. A reviewing court may not overturn an Act 111 arbitration award for mere errors of law. *See also Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, —— Pa. Commonwealth Ct. ——, 557 A.2d 469 (1989), *aff'd per curiam*, 526 Pa. 301, 586 A.2d 355 (1991).

Act 111 employees have no right to strike; their disputes must be settled quickly and appeals are discouraged. Therefore, the reviewing court has a narrow scope of review. *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 129 Pa. Commonwealth Ct. 392, 565 A.2d 1232

**2.** This case involved aggrieved college faculty members whose arbitration rights arose from the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, 43 P.S. §§ 1101.101–1101.2301.

(1989). Moreover, Section 7(a) of Act 111, 43 P.S. § 217.-7(a), asserts: "The determination of the majority of the board of arbitration ... shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved.... No appeal therefrom shall be allowed to any court." *Id.*, 129 Pa.Commonwealth Ct. at 395, 565 A.2d at 1234.

Because Act 111 limits the right to appeal an arbitrator's decision, the standard of review is more narrow compared to the standard of review of other arbitration cases. Therefore, we hold that the trial court erred when it applied the standard of review from the Uniform Arbitration Act.

The second issue raised in this appeal pertains to whether Pittman was denied constitutional due process when he was dismissed from the police force. The trial court held that Pittman was denied due process and held that he was not afforded the appropriate notice and opportunity to be heard when he was dismissed from the police force. The United States Supreme Court in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), articulated the due process requirements in order for a civil servant to be terminated. The Supreme Court held that a pretermination hearing must be held before a government employee is terminated. This hearing need only be "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. at 1495; *See Adamovich v. Department of Public Welfare*, 95 Pa. Commonwealth Ct. 22, 504 A.2d 952 (1986).

■■■■ The pretermination hearing must give the employee notice of the charges against him or her, an explanation of the employer's evidence and an opportunity to respond and to present his or her side of the story. The hearing need not definitely resolve the propriety of the discharge, according to the *Loudermill* decision. Additionally, Section 7.7–303 of the Philadelphia Home Rule Charter (Charter), 351 Pa.Code § 7.7–303, and Section 7.7–401(q) of the Char-

ter pertaining to Civil Service Regulations[3] further articulate due process requirements for the dismissal of employees. The Charter states that an employee may only be dismissed for just cause and the civil service regulation articulates that an employee must be given notice and an opportunity to be heard before being dismissed.

■ Pittman argues that he was denied due process by the EAD.[4] According to Pittman, on October 27, 1987, Philadelphia Police officers threatened him with federal criminal prosecution if he did not cooperate with their investigation. He also states that he was not informed of the charges against him on November 19, 1987, when he was suspended and ordered to appear before the EAD for questioning. Pittman asserts that he was not apprised of the charges against him until December 8, 1987, the day that he received his formal notice of intention to dismiss.

■ In addressing Pittman's arguments, we must first examine more closely the facts in this case. On October 27, 1987, Pittman was visited at his home by members of the EAD, INS, and the State Police. During this interview, he was asked about his participation in a scam to sell driver licenses to illegal aliens. The record indicates that the police officers and federal investigators informed Pittman that he was the subject of a criminal investigation in matters pertaining to the driver licenses scam. The officers and investigators also described the evidence which they had collected against Pittman, including recorded conversations between Pittman and other alleged participants in the scam.

We find that this October 27, 1987 meeting gave Pittman the appropriate due process notice of the charges against him and the evidence supporting those charges. The United States Court of Appeals in *Gniotek* articulated the two

3. 351 Pa.Code § 7.7–401(q).

4. Pittman had a due process property interest in continued employment with the police force. *Gniotek v. City of Philadelphia*, 808 F.2d 241 (3rd Cir.1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987).

essential requirements for administrative due process notice. The Court stated that notice is sufficient when it: (1) apprises the vulnerable party of the charges and general evidence against him; and (2) when it is timely given under the particular circumstances of the case. *Id.* at 244. The *Gniotek* case involved police officers who were being investigated on bribery charges by the EAD of the Police Department. Before suspending one of the suspected police officers, Inspector Andres Hantwerker interviewed the suspected police officer and stated, 'we are questioning you concerning testimony presented in Federal Court under oath by Eugene Boris an admitted number runner, that he paid you $60 per month for an extended period beginning in 1982 for protection of his illegal activities.' *Id.* The U.S. Court of Appeals found that this statement made by the Inspector was sufficient to give the police officer due process notice, in that it clearly gave Gniotek notice of the charges against him and the nature of the evidence collected.

Adopting the reasoning from the *Gniotek* case, we find that Pittman was given notice of the charges against him and the nature of the evidence collected in support of those charges on October 27, 1987. The officers described to Pittman that they were investigating his participation in a scam involving the sale of driver licenses to illegal aliens and they described the nature of the evidence collected against Pittman, including the recorded conversations of other participants in the scam. Also, they told Pittman that if he did not cooperate with the investigation, he would be fired. Therefore, we reject Pittman's argument that he was not informed of the charges levied against him on November 19, 1987, when he was suspended with the intent to dismiss.

■ The notice which Pittman received on October 27, 1987 also meets the second requirement of the *Gniotek* notice test. This notice was obviously timely under the circumstances of Pittman's case, because he received it well

before he was suspended from the police force on November 19, 1987.

   ■  We also find that Pittman had ample opportunity to respond to the charges levied against him. On November 19, 1987, the day that Pittman received his suspension, he was ordered to appear before the EAD to answer questions related to his involvement in the driver licenses scam. When the police department ordered Pittman to appear on November 19, 1987, he was informed that he was entitled to representation by counsel and, in fact, evidence indicates that he was represented by counsel at this meeting.[5] This November 19, 1987 meeting was Pittman's first opportunity to reply to the charges levied against him by the department.

On December 9, 1987, Pittman received additional notice from the department in the form of a Formal Notice of Intention to Dismiss. (See Footnote No. 1 herein for part of the text of the Notice of Intent to Dismiss). This Notice of Intent to Dismiss articulated the charges levied against Pittman and also provided Pittman with an opportunity to reply to the charges stated in the notice.

In summary, we find first that the trial court erred when it applied an expanded scope of review in this Act 111 arbitration appeal. Also, we find that the trial court erred when it determined that Pittman was denied due process when he was dismissed from his position with the police department. Pittman received notice of the charges against him and had an opportunity to reply to the charges, all the due process required by law.

Therefore, we reverse the trial court's order vacating the arbitration award and we reinstate the arbitration award dismissing Pittman.

---

**5.** The record shows that on November 19, 1987, Pittman was represented by Charles Dennis, Jr., Esq., who advised Pittman to refuse to sign his 30–day suspension.

## ORDER

AND NOW, this 27th day of February, 1991, the order of the Court of Common Pleas of Philadelphia County is reversed and we reinstate the arbitration award dismissing Pittman.