CITY OF PITTSBURGH

v.

FRATERNAL ORDER OF POLICE,
Fort Pitt Lodge No. 1,
Appellant.

City of Pittsburgh

v.

Fraternal Order of Police, Fort Pitt
Lodge No. 1, Appellant.

Commonwealth Court of Pennsylvania.

Argued Oct. 16, 2006.

Decided Nov. 22, 2006.

Eric C. Stoltenberg, Pittsburgh, for appellant.

Hugh F. McGough, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

This appeal was previously before us in *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 850 A.2d 846 (Pa.Cmwlth.2004) (*FOP I* ), where we held, among other things, that an arbitration panel's award reducing post-retirement medical benefits for police officers was not improper. The Pennsylvania Supreme Court has remanded the matter to us to address whether our decision conflicts with its decision in *Appeal of Upper Providence Township*, 514 Pa. 501, 526 A.2d 315 (1987) (*Upper Providence 2* ).

In *FOP 1*, the City of Pittsburgh (City) and the Fraternal Order of Police, Fort Pitt Lodge No. 1(FOP), were parties to a Collective Bargaining Agreement (CBA) which set forth the terms and conditions of employment for City police officers, including their medical benefits upon retirement. Unable to reach an agreement as to the terms for a successor CBA, which would take effect January 1, 2003, the FOP demanded interest arbitration, and an arbi-

tration panel was convened to resolve disputed issues specifically related to medical benefits for a retiring officer and his or her spouse.

Prior to this dispute, an interest arbitration award in 1996 determined the medical benefits available to retired officers and became part of the CBAs effective for the years delineated in those awards. The January 31, 1996 interest award, effective from January 1, 1996, through December 1, 1997, stated that the City would provide any officers who retired after January 1, 1982, 1984 and 1996 with Blue Cross/Blue Shield/Major Medical insurance coverage and would contribute towards the coverage an amount equal to that charged by Blue Cross/Blue Shield.[1]

Before the hearing, the City proposed that its contribution toward premium costs for retiree medical insurance be capped at the date of retirement with the retiree paying any increases. After hearings, the arbitration panel issued an award dated February 14, 2003, effective from January 1, 2003, through December 31, 2004, granting the City's proposal. Specifically, the arbitration panel stated, in pertinent part, the following in Section 14, Paragraph 4 of the award:

> 4. For those retiring after January 1, 2004, the City shall contribute toward the cost of husband and wife coverage (Section 14 B II 9) for each employee so electing, an amount equal to the amount charged for such insurance by the carrier providing such coverage on the date of his/her retirement.

The FOP appealed to the trial court requesting it to vacate the arbitration panel's award capping the City's contribution toward the cost of future retiree medical insurance to an amount equal to the amount paid by the City for such coverage on the date of the officer's retirement. It argued that the current retirees and those officers actively employed prior to the date of the award had a contractual right to have the City pay any premium increases for such coverage after retirement. The trial court denied the request, finding that the cap was valid because it was "placed by the Board on the City's contribution to the cost of health care coverage for officers retiring after January 1, 2004 carried forward and renewed a mutually agreed to contractual right in place since January 1, 1996. The cap is valid because it affects only affected officers retiring after a date certain in the future." (Trial court's December 10, 2003 opinion at 7.)

On appeal to this Court, the FOP argued that the arbitration award violated Article I, Section 10 of the United States Constitution and Article 1, Section 17 of the Pennsylvania Constitution because Section 14, Paragraph 4 of the award capping the City's contribution towards officers' post-retirement medical benefits for those active-duty police officers who retired after the effective date of the award was part of the City's contractual obligation and could not be diminished by an award. Denying the FOP's appeal, we held that:

> [w]hile public retirement benefits, if awarded at the time of retirement, are a

---

1. There was also a November 30, 2000 interest award effective from January 1, 2001, through December 31, 2002, which required the City to provide health benefits through at least one of its current provider networks at no cost to the employees, but also allowed the City to make arrangements to offer enhanced options with contributions by the employees using a different provider network. Using a competitive bidding process, if higher cost networks were offered, employees would pay the difference in cost between the lowest cost network and the more expensive networks. These provisions also applied to officers who retired after January 1, 2001.

form of deferred compensation, constitute contractual benefits and are rights protected by the United States Constitution, *see Association of Pennsylvania State College and University Faculties v. State System of Higher Education,* 505 Pa. 369, 479 A.2d 962 (1984), that does not mean that the Board was without authority to change future retirees' benefits that were awarded in previous contracts. As we pointed out in *City of Wilkes–Barre v. City of Wilkes–Barre Police Benevolent Association,* 814 A.2d 285 (Pa.Cmwlth.2002) "[t]here is no ... limitation on consensual modification of existing retirement benefits, nor is there authority limiting arbitrators' ability to modify retirement benefits as part of a statutory dispute resolution process." 814 A.2d at 288. All that those cited constitutional provisions foreclose is unilateral change in contractual benefits, not changes that are entered by mutual agreement in a contract or by an Act 111 panel. If we were to adopt the FOP's position, it would mean that collective bargaining contracts and Act 111 boards could only award increased benefits and could never reduce any benefits.

(*Fraternal Order of Police* at 9–10.)

The FOP filed a petition for allowance of appeal with our Supreme Court, which was granted. By ordered dated November 30, 2005, the Court remanded the matter to us to determine, "Whether the Commonwealth Court's decision permitting the reduction of post-retirement healthcare benefits for **active** officers conflicts with the Supreme Court decision in *Appeal of Upper Providence Township,* 514 Pa. 501, 526 A.2d 315 (1987)." (Emphasis added.) This is all that the Court has directed us to review and the only issue now before this Court.

While dealing with many other issues, *Upper Providence 2* addressed 53 Pa.C.S. § 2962(3) [2] which provided that home rule municipalities were not "authorized to diminish the rights or privileges of any former municipal employee entitled to benefits or any present municipal employee in his pension." The question implicit in the Supreme Court's remand is whether this provision, as interpreted by *Upper Providence 2,* precludes an arbitration panel from reducing post-retirement medical benefits in the future for officers who have not yet retired.

In *Upper Providence 2,* Upper Providence Township (Township) and the FOP of Delaware County were unsuccessful in reaching a collective bargaining agreement for the year 1984 [3] on the issue of hospital and medical benefits that were being provided to **retired** bargaining unit members. The original 1976–1977 collective bargaining agreement provided that the full hospital and medical benefits in effect at the time of retirement were to continue annually after retirement until death. The impasse on that issue was because the Township believed that providing medical benefits to police officers after retirement was illegal and wanted the benefit removed as a matter of law. The matter was submitted to arbitration with only that "one issue in dispute, the legality of the hospital and medical bene-

---

**2.** At the time of *Upper Providence 2*, this provision was denominated as Section 302(b)(iii) of the Law, but it was codified on December 19, 1996, at P.L. 1158, as Section 2962(c)(3) of the Law, 53 Pa.C.S. § 2962(c)(3). For clarity, we will refer to this section throughout the remainder of this opinion as Section 2962(c)(3) of the Law.

**3.** Tax year 1983 was also at issue before the arbitration panel, but it found that benefits were to continue annually after retirement until death, and the Township did not appeal that award.

fits that were currently being provided to **retired** bargaining unit members." *Upper Providence 2,* 514 Pa. at 504, 526 A.2d at 316. (Emphasis added.) Agreeing with the Township's position, "a majority of this panel has concluded that this benefit is illegal and has refused to continue this benefit beyond 1983." *Id.* at 505, 526 A.2d at 317 (quoting from the dissenting arbitrator's opinion).

The FOP appealed the award of the arbitration panel denying benefits for 1984 to the trial court which held that the arbitrators erred in revoking the benefits because "such benefits 'are legal and irrevocable, once given.' " *Id.* at 506, 526 A.2d at 317. The Township appealed to this Court, and we affirmed, agreeing that the arbitration panel committed an error of law in holding that medical benefits could not be provided to retirees. Pertinent to what is before us, we stated:

> The parties have briefed and argued the question of whether the common pleas court properly declared by dictum that [53 Pa.C.S. § 2962(c)(3)] providing that "no municipality shall . . . be given the power [by its charter] to diminish the rights or privileges of any former municipal employe" forbade Upper Providence Township from terminating these benefits which had been conferred by earlier collective bargaining agreements and arbitration award. *This question is **not** germane because the township was not here seeking to diminish benefits of former employees; it was seeking through bargaining to obtain a contract in which the benefits might be eliminated in future as unlawful.* (Emphasis added.)

*See Appeal of Upper Providence,* 93 Pa. Cmwlth. 272, 502 A.2d 263, 267 (Pa. Cmwlth.1985) (*Upper Providence 1* ).

Our Supreme Court granted the Township's petition for allowance of appeal. After finding that we had erred in holding that we were permitted to reverse an arbitration award due to an error of law, Justice Larsen, writing for the Court, went on to review the award to determine whether the award conformed with the Home Rule Charter and Optional Plans Law (Law).[4] He held that an arbitration award may be in excess of the arbitrator's exercise of powers if it requires the public employer to perform an act that it is prohibited by law from performing. He did so based on his finding that because a home rule municipality could not do anything contrary to 53 Pa.C.S. § 2962(c)(3), which provides that, "No municipality shall be given the power to diminish the rights or privileges of any *former municipal employe entitled to benefits or any present municipal employe in his pension or retirement system,*" neither could the arbitrator. (Emphasis added.) He went on to state:

> The arbitrators' award eliminating post-retirement hospital and medical benefits for 1984 violated section 302 of the Home Rule Act as it constituted an illegal diminishment of retirement benefits to former and present employees. The stipulation of the parties narrowly defined the issue and the benefit in question, namely the illegality or legality of the "Medical after Retirement" provision which provided: "The full hospital and medical benefits in effect at the time of retirement . . . to continue annually after retirement until death." The arbitration award discontinued for 1984 the hospital and medical benefits after retirement until death, and thus "diminish [ed] the rights or privileges of any **former** municipal employe entitled to benefits or any present municipal employe in

---

4. Act of April 13, 1972, P.L. 184, *as amended,*   53 P.S. §§ 1–101—1–1309.

his pension or retirement system." (Emphasis added.)

However, he went on to make this problematic statement:

Since the Township was prohibited by the Home Rule Act from voluntarily eliminating the post-retirement hospital and medical benefits for **present and former** employees, the award of the arbitrators eliminating those benefits for 1984 was illegal and thus in excess of the exercise of their powers. While we disapprove of their reasoning, the lower courts were correct, therefore, in reversing the arbitration award to the extent that it eliminated post-retirement hospital and medical benefits for 1984.(FN7) (other footnotes omitted.)

Footnote 7 to this paragraph states:

In *Lower Merion Fraternal Order of Police Lodge Number Twenty–Eight v. Township of Lower Merion*, 511 Pa. 186, 512 A.2d 612 (1987), two members of this Court would have held that the Township of Lower Merion was prohibited from providing post-retirement medical benefits to retired employees. (Opinion In Support of Affirmance In Part and Reversal In Part per Zappala, J., joined by Flaherty, J., with Nix, C.J. concurring in that disposition; Larsen, J. wrote Opinion in Support of Reversal, joined by Hutchinson and Papadakos, JJ., which would have upheld the arbitration award of post-retirement medical benefits). The Lower Merion decision is distinguishable because it involved the powers and limitations of a municipality under the First Class Township Code, which differ markedly from those of a home rule community. Additionally, Lower Merion has been reargued before this Court on January 29, 1987. [The entire appeal was later dismissed as having been improvidently granted. 514 Pa. 501, 526 A.2d 315].

Because there appeared to be no agreement at that time among the Justices as to whether it was legal to award post-retirement medical benefits at all, Justice Larsen apparently decided to sidestep the issue and hold that home rule municipalities could not reduce retirement benefits once granted. The question presented now is whether the holding in *Upper Providence 2* encompasses just the first part of the Law that prohibits the diminishment of "the rights or privileges of any **former** municipal employee entitled to benefits" or if it also includes "any **present** municipal employee in his pension or retirement system."

The FOP argues that it covers present employees pointing out that Justice Larsen stated that the "Home Rule Act [prohibited home rule municipalities] from voluntarily eliminating the post-retirement hospital and medical benefits for **present and former** employees." (Emphasis added.) However, this language was, at best, dicta and more likely a stray comment because the issue addressed at all stages in the proceedings was whether post-retirement medical benefits could be provided to **retired** employees and their families, not whether benefits could be reduced prior or retirement. Moreover, throughout the rest of the opinion, the class of "employee" being addressed was "former" or "retired" employees. To answer, then, the precise question framed to us by our Supreme Court, "Whether the Commonwealth Court's decision permitting the reduction of post-retirement healthcare benefits for **active** officers conflicts with the Supreme Court decision in *Appeal of Upper Providence Township*, 514 Pa. 501, 526 A.2d 315 (Pa.1987)," for those reasons set forth above, it appears that it does not.

The larger question presented by *Upper Providence 2*, and the one the parties have briefed, is whether Section 2962(c)(3) of

the Law, 53 Pa.C.S. § 2962(c)(3), prohibits the diminishing through collective bargaining or arbitration of "the rights or privileges of . . . any present municipal employee in his pension or retirement system." In *FOP I*, what was at issue was whether post-retirement medical benefits contractually given could be modified so that active duty employees retained the same level of coverage they had at retirement or whether they were entitled at retirement to have the "better" plan that had been previously provided. Relying on *City of Wilkes–Barre v. City of Wilkes–Barre Police Benevolent Association*, 814 A.2d 285 (Pa.Cmwlth.2002), we held that Section 2962(c)(3) of the Law, 53 Pa.C.S.

§ 2962(c)(3), did not preclude reduction through collective bargaining or arbitration, and "future retirement benefits that were awarded in previous contracts" could be changed.[5]

We stated it in that way because those benefits were not part of the "rights or privileges . . . any present municipal employee [had] in his or [her] pension or retirement system" as they were conferred through the collective bargaining contract or interest award for the term of that contract or award. Prior to the enactment of Home Rule, Act 111[6] or Act 195,[7] the General Assembly had created pension systems for most classes of municipalities.[8] For police officers in cities of the second

**5.** Citing *Police Bargaining Unit of the Borough of Montoursville Police Department v. The Borough of Montoursville*, 160 Pa.Cmwlth. 333, 634 A.2d 830 (1993), the FOP admits that all pension benefits can be reduced by agreement between a union and management, but contends that such rights cannot be reduce through arbitration. In *Montoursville*, at issue was whether an interest arbitration panel could impose police force strength without the consent of the Borough. We held that it was outside the purview of collective bargaining because it was not rationally related to a policeman's performance of his duties and it was not a subject of bargaining under Act 111, even though the Borough had previously agreed to it under its collective bargaining agreements. More apropos is our decision in *Pennsylvania State Troopers Association v. Pennsylvania State Employes' Retirement Board*, 677 A.2d 1329, 1330–1331 (Pa. Cmwlth.1996). That case involved challenges to the reduction of pension benefits contained in an arbitration award which the union alleged constituted an unconstitutional impairment of the contractual benefits they enjoyed before the award. In dismissing their appeal, we stated:

> We disagree with Petitioners' position, considering that while active members of SERS, they belonged to an Act 111 collective bargaining unit authorized to enter into binding arbitration on their behalf in a variety of matters, including pension and retirement benefits. Petitioners are bound by the total result negotiated by the union on their

behalf and cannot selectively choose or reject aspects of a negotiated agreement as they would wish. Accordingly, the Act 111 . . . Award is binding upon Petitioners, even though calculation of Claimants' pensions pursuant to the Award formula yields a less beneficial result than the Retirement Code formula.

**6.** Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1—217.10.

**7.** Act 195 is the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101—1101.2301.

**8.** *See* the Second Class City Code, Act of August 1, 1975, P.L. 169, 53 P.S. §§ 23641–23666 (Policemen's Relief and Pension Fund); the Second Class A City Code, Act of July 3, 1947, P.L. 1242, *as amended*, 53 P.S. §§ 30491–30515.1 (Policemen and Firemen's Pension Funds); the Third Class City Code, Act of May 29, 1956, P.L. (1955), *as amended*, 53 P.S. §§ 761–778 (Police Pension Fund); the First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 56409–56413; the Second Class Township Code, Act of May 1, P.L.1933, P.L. 103, *reenacted and amended*, November 9, 1995, P.L. 350, 53 P.S. §§ 66910; the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 46131–46137 (Police Pension Fund). None of these Codes provide for post-retirement medical benefits.

class, the General Assembly "created and established, in every city of the second class in this Commonwealth, a fund for the care, maintenance, and relief of aged, retired, and disabled employes of the Bureau of Police of such city, which fund shall be known as the 'Policemen's Relief and Pension Fund of the City of [Pittsburgh].'" This Act created an independent administrative scheme with its own Board charged with awarding and administrating pensions. It denominated how much each retiree would receive based on years of service and salary. Notably, it did not confer any right to any post-retirement pension benefit.

When the General Assembly implemented the constitutional requirement in 1972 by adopting the Home Rule and Optional Plans Law, home rule municipalities were given the right to change statutes that were not of statewide application. *See Upper Providence 1*, 93 Pa.Cmwlth. 272, 502 A.2d 263 (Pa.Cmwlth.1985). Because no municipal pension statute was statewide in application, the General Assembly was concerned that home rule municipalities would take it upon themselves to unilaterally change the statutorily created pension systems. It foreclosed that possibility when it provided in Section 2962(c)(3) of the Law, 53 Pa.C.S. § 2962(c)(3), that home rule did not include that power for present employees. Moreover, unlike its

language relating to retired employees where no "benefits" could be reduced, Section 2962(c)(3) of the Law provided for "present" employees only specifically identified benefits, those awarded as part of the "pension or retirement system" could not be reduced.[9] Because post-retirement medical benefits in this case were not benefits provided as part of any "retirement or pension system," the arbitration panel was not precluded from changing those benefits from a specifically identified medical package to one that was the same as the plan that they had on the date of their retirement.

Accordingly, because our decision in *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, 850 A.2d 846 (Pa.Cmwlth.2004), does not conflict with our Supreme Court's decision in *Upper Providence 2*, nor is contrary to 53 Pa.C.S. § 2962(c)(3), we affirm the decision of the trial court affirming the arbitrator's award regarding post-retirement medical benefits for active employees.

### ORDER

AND NOW, this *22nd* day of *November*, 2006, because this Court's decision in *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1 v.*, (Pa.Cmwlth. 2004)(*FOP I*), does not conflict with our Supreme Court's decision in *Appeal of Up-*

---

**9.** It was also unclear at the time the Home Rule and Optional Plans Law was enacted in 1972 whether statutory pension benefits set forth in a "pension or retirement system" could be changed through interest arbitration. That doubt was not resolved until our Supreme Court's decision in *Commonwealth v. Conference of State Police Lodges*, 525 Pa. 40, 575 A.2d 94 (1990), holding that benefits statutorily set could be altered by an interest arbitration award. *See also Pennsylvania State Troopers Association v. Pennsylvania State Employees' Retirement Board; Fraternal Order of Police, E.B. Jermyn Lodge No. 2 v. City of Scranton*, 26 Pa.Cmwlth. 513, 364

A.2d 753 (Pa.Cmwlth.1976). Moreover, at that time it was considered illegal for a municipality to provide for pensions different than those provided for in the statutory "retirement or pension system," by ordinance, collective bargaining, or otherwise, because municipalities only had the power given to them by the various municipal codes to compensate employees, not ex-employees. *See Lower Merion Fraternal Order of Police, Lodge Number Twenty-Eight*, 511 Pa. 186, 512 A.2d 612 (1986). *See also White Deer Township v. Napp*, 874 A.2d 1258 (Pa.Cmwlth.2005); *Fairview Township v. Fairview Township Police Association*, 795 A.2d 463 (Pa.Cmwlth.2002).

*per Providence Township,* 514 Pa. 501, 526 A.2d 315 (1987), we affirm the decision of the trial court affirming the arbitrator's award regarding post-retirement medical benefits for active employees.