FRATERNAL ORDER OF POLICE,
FLOOD CITY LODGE NO. 86

v.

CITY OF JOHNSTOWN, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 2011.

Decided Feb. 22, 2012.

Reargument Denied April 12, 2012.

David P. Andrews, Altoona, for appellant.

Eric C. Stoltenberg, Pittsburgh, for appellee.

Clifford B. Levine, Pittsburgh, for amici curiae Pennsylvania Department of Community and Economic Development and the Act 47 Coordinator for the City of Johnstown.

BEFORE: LEADBETTER, President Judge,[1] and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and BUTLER, Judge.[2]

OPINION BY Judge SIMPSON.[3]

The City of Johnstown (City) appeals from an order of the Court of Common

---

1. This case was assigned to the opinion writer before Judge Pellegrini succeeded Judge Leadbetter as President Judge.

2. This case was decided before Judge Butler's term ended on January 2, 2012.

3. This opinion is filed in accordance with Section 256(b) of the Internal Operating Pro-

Pleas of Cambria County (trial court) which vacated Section 4(a) of an interest arbitration award between the City and the Fraternal Order of Police, Flood City Lodge No. 86(FOP), which involves healthcare benefits for certain police officers retiring after a given date. Many of the issues originally presented were resolved by our Supreme Court's recent decision in *City of Scranton v. Firefighters Local Union No. 60, of the International Association of Fire Fighters,* —— Pa. ——, 29 A.3d 773 (2011) (*City of Scranton*). Nevertheless, we must decide whether the trial court erred in determining that post-retirement benefits for current employees are part of a retirement system which, pursuant to Section 2962(c)(3) of the Home Rule Charter and Optional Plans Law (Home Rule Charter Law),[4] cannot be diminished. For the following reasons, we affirm the order of the trial court.

## I. Background

### A. Generally

The City is a home rule charter municipality within the meaning of the Home Rule Charter Law. Pursuant to the Policemen and Firemen Collective Bargaining Act (Act 111),[5] and the Pennsylvania Labor Relations Act (PLRA),[6] the City is the public employer of its police officers. The FOP is the exclusive collective bargaining representative for the City's police officers pursuant to Act 111 and the PLRA. The City and the FOP were parties to a January 1, 2007 through December 31, 2009 collective bargaining agreement (CBA), which set forth the wages, hours, and other terms and conditions of the police officers' employment.

The terms of an interest arbitration award provided that active police officers hired *prior* to October 11, 2007, were promised full post-retirement health insurance benefits for the *officer and his/her spouse and dependents* until the member became eligible for Medicare. In addition, it provided that police officers hired *after* October 11, 2007, were entitled to receive fully paid post-retirement health insurance for the *officer only,* until he/she was eligible for Medicare.

On June 15, 1992, the City requested the Pennsylvania Department of Community Affairs (now known as the Department of Community and Economic Development–DCED) to determine whether the City was eligible for distressed municipality status under the Municipalities Financial Recovery Act (Act 47).[7] That same year, the DCED found that the City was a distressed municipality and, pursuant to Act 47, a coordinator (Act 47 Coordinator) was appointed by DCED to prepare a plan addressing the City's financial problems. Thereafter, recovery plans were developed and adopted.

On December 12, 2007, the City adopted and implemented its fourth amended (and current) recovery plan (2007 Recovery Plan). A provision of the 2007 Recovery Plan stated: "*Retiree Healthcare—Em-*

---

cedure of the Commonwealth Court, 210 Pa. Code § 67.29(b), which directs that where a recusal of a commissioned judge results in a tie vote among the commissioned judges, the opinion shall be filed as circulated and shall not be published unless a majority of the participating judges vote to do so. A majority of the participating judges voted to publish this opinion; therefore this opinion is being filed as reported.

**4.** 53 Pa.C.S. § 2962(c)(3).

**5.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

**6.** Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–211.13.

**7.** Act of July 10, 1987, P.L. 246, *as amended,* 53 P.S. §§ 11701.101–11701.712.

ployees hired on or before October 11, 2007, the date of the Act 111 arbitration award, shall retain retiree healthcare but for such employees only and not for their dependents." Reproduced Record (R.R.) at 170a.

## B.  Award

In 2009, the FOP initiated collective bargaining over terms for a successor CBA; however, the parties were unable to reach an agreement.  As a result, the FOP made a timely request for interest arbitration in accordance with Act 111.  A panel was selected, and it took testimony and received other evidence.  Thereafter, a divided panel issued the award on April 12, 2010.  Consistent with the 2007 Recovery Plan, Section 4(a) of the award, entitled "Retiree Health Insurance" stated:

> *Effective January 1, 2011,* employees of the bargaining unit hired on or *before October 11, 2007* shall retain *retiree healthcare for Employee Only* coverage, and not for any coverage above Employee Only. The 15% premium co-payment applicable to active officers shall not apply to these post January 1, 2011 retirees.  It is recognized, however, in accordance with the Recovery Plan that retirees in this classification shall be required to pay the increases in healthcare premiums subsequent to the date of retirement.

R.R. at 7a–8a (emphasis added).

## C.  Trial Court

The FOP filed a petition with the trial court to partially vacate the award because it violated Section 2962(c)(3) of the Home

Rule Charter Law, Article I, Section 10 of the United States Constitution, and Article I, Section 17 of the Pennsylvania Constitution.  The FOP asserted Section 4(a) illegally diminished the post-retirement medical benefits of: (1) police officers hired before October 11, 2007 and retiring after January 1, 2011 (which it argues encompasses the majority of the FOP) by eliminating coverage for their spouses and dependents, and by requiring them to pay the increases in healthcare premiums for such coverage after retirement; and, (2) police officers hired after October 11, 2007 by requiring them to pay all increases in the premiums for such coverage.  The City filed its answer to the FOP's petition denying its allegations.

■  Both parties submitted written and oral argument to the trial court.  On August 24, 2010, the trial court issued an order vacating Section 4(a) of the award on the basis that the provision constituted an unlawful elimination of post-retirement medical benefits in violation of the Home Rule Charter Law. The City filed a timely appeal to this Court seeking to reinstate Section 4(a) of the award.[8]  Subsequently, DCED and the City's Act 47 Coordinator filed an application to intervene, they filed written argument as friends of the court principally aligned with the City, and they participated in oral argument.[9]

## D.  *City of Scranton*

The majority of arguments raised by the City, DCED and the City's Act 47 Coordinator relate to the impact of Act 47 and

---

**8.**  Appellate review of an Act 111 arbitration award is in the nature of narrow *certiorari.*  It is limited to issues regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; and, (4) deprivation of constitutional rights.  *City of Scranton v. Fire-*

*fighters Local Union No. 60, of the International Association of Fire Fighters,* —— Pa. ——, 29 A.3d 773 (2011).

**9.**  By order of October 25, 2011, the application for intervention was listed for disposition on the merits.  The petition is granted.

the 2007 Recovery Plan on the award. In the interim, however, our Supreme Court decided *City of Scranton.* The Court determined that Section 252 of Act 47[10] "does not impinge on interest arbitration awards" under Act 111. *City of Scranton,* —— Pa. at ——, 29 A.3d at 789. It is beyond dispute that this decision renders these arguments moot.

## II. Issue on Appeal

Nevertheless, one significant issue remains. The City and its allies contend that Section 2962(c)(3) of the Home Rule Charter Law does not protect future expectations of post-retirement benefits and does not apply to the elimination of post-retirement benefits for current employees. Section 2962(c)(3) of the Home Rule Charter Law provides that a municipality shall not "[b]e authorized *to diminish the rights or privileges of* any former municipal employee entitled to benefits or *any present municipal employee in his pension or retirement system.*" 53 Pa.C.S. § 2962(c)(3) (emphasis added).

The City and its allies contend the trial court erred in determining that post-retirement benefits for current employees are part of a retirement system which cannot be diminished. They assert this erroneous determination by the trial court was the basis for its vacation of Section 4(a) of the award.

More particularly, the City and its allies assign error in the trial court's reliance on the Supreme Court's decision in *Appeal of Upper Providence Township,* 514 Pa. 501, 526 A.2d 315 (1987) (*Upper Providence*), because that case did not involve a municipality subject to Act 47 and did not involve current employees. Also, the City and its allies assert that Section 2962(c)(3) of the

Home Rule Charter Law does not apply to post-retirement healthcare. They rely heavily on this Court's decisions in *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1,* 911 A.2d 651 (Pa. Cmwlth.2006) (*Commonwealth–FOP II*), *aff'd on other grounds, City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1,* 595 Pa. 47, 938 A.2d 225 (2007) (*Supreme–FOP II*), and in *Millcreek Township Police Association v. Millcreek Township,* 960 A.2d 904 (Pa.Cmwlth. 2008). These cases are examined below.

In contrast, the FOP argues in support of the trial court's actions. It asserts the trial court properly relied on the Supreme Court's decision in *Upper Providence.* The FOP demonstrates how Section 4(a) of the award diminished the retirement healthcare benefits of yet-to-retire officers. Also, the FOP contends that the Home Rule Charter Law prohibition on diminishing a current employee's rights in a retirement system extends to post-retirement healthcare benefits. It seeks to distinguish our decision in *Commonwealth–FOP II.* In doing so, it emphasizes the Supreme Court's subsequent review in *Supreme–FOP II.* Finally, the FOP preserves as an alternate rationale an argument not addressed by the trial court, that a reduction of post-retirement healthcare benefits is constitutionally infirm.

## III. Discussion

### A. *Upper Providence*

An examination of the cases is required. We begin with the Supreme Court's 1987 decision in *Upper Providence,* which involved the Home Rule Charter Law. An interest arbitration panel eliminated prospective hospital and medical benefits that

---

**10.** 53 P.S. § 11701.252 (providing that a collective bargaining agreement or arbitration settlement executed after the adoption of a

recovery plan shall not in any manner violate, expand or diminish its provisions).

were being provided to retired police officers. Most of the decision addresses the proper scope of review of arbitration awards under Act 111. The Court decided that the award could be reviewed to determine whether the prospective elimination of post-retirement healthcare benefits was in excess of the arbitrators' powers.

Turning to the merits, the Supreme Court held: "The arbitrators' [1983] award eliminating post-retirement hospital and medical benefits for 1984 violated ... the Home Rule Act as it constituted an illegal diminishment of retirement benefits to *former and present employees.*" *Upper Providence,* 514 Pa. at 515, 526 A.2d at 322 (emphasis added). Quoting language in the Home Rule Charter Law identical to that currently at issue,[11] the Court repeated its position as follows:

> Since the Township was prohibited by the Home Rule Act from voluntarily eliminating the post-retirement hospital and medical benefits *for present and former employees, the award of the arbitrators eliminating those benefits for 1984 was illegal* and thus in excess of the exercise of their powers.

*Id.* at 516, 526 A.2d at 322 (emphasis added). The Court based its decision entirely on the Home Rule Charter Law. It specifically declined to rule on constitutional issues.

■ Clearly, the Supreme Court did not distinguish between present and former employees. This approach is logical: the prospective elimination of the post-retirement healthcare benefits most immediately effected former employees, but it would also affect current employees when they

retired in the future. As to *both* groups, the diminishment of post-retirement healthcare benefits was expressly declared illegal under the Home Rule Charter Law. This decision appears binding and dispositive.

### B.  *Commonwealth–FOP II*

The City and its allies rely heavily on this Court's decision in *Commonwealth– FOP II.* For context, this decision was part of the second round of appeals involving an interest arbitration award under Act 111. After the first round of appeals, the Supreme Court remanded the case to the Commonwealth Court with direction "to apply *Upper Providence* to this matter." *See Supreme–FOP II,* 595 Pa. at 54, 938 A.2d at 230. The award provision in question capped the city's contribution towards post-retirement medical benefits for current police officers who would retire in the future.

Despite the Supreme Court's direction, the panel in *Commonwealth–FOP II* first concluded that *Upper Providence* did *not* apply. That conclusion was based on the determination that in *Upper Providence* only former employees (retirees) were impacted by the prospective elimination of the post-retirement healthcare benefit. The panel did not acknowledge that the elimination of that benefit in *Upper Providence* would also impact current employees when they retired in the future.

The Commonwealth Court panel also decided that the healthcare premium cap did not violate the Home Rule Charter Act. That was because the post-retirement healthcare benefits were not part of a stat-

---

**11.** At the time *Appeal of Upper Providence Township,* 514 Pa. 501, 526 A.2d 315 (1987) was decided, Section 2962 of the Home Rule Charter Law was numbered 53 P.S. § 1–302(b)(iii). For the sake of clarity, appellate courts consistently refer to this provision as Section 2962 rather than utilizing both the Section 2962 and the Section 1–302 enumerations. *See City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1,* 595 Pa. 47, 52, 938 A.2d 225, 229 n. 6 (2007).

utorily-created pension system; rather, they were the creature of an arbitration award. The panel assumed the premium cap resulted in a diminishment of rights.

## C. *Supreme–FOP II*

Unlike the Commonwealth Court, the Supreme Court on further appeal applied *Upper Providence,* even though post-retirement healthcare costs for current employees were at issue. *Supreme–FOP II,* 595 Pa. at 54, 938 A.2d at 230 ("Thus, our review on this appeal is limited to determining whether the 2003–04 retire premium cap constitutes an illegal act per *Upper Providence.*"). The Court parsed its analysis into two parts: whether the premium cap was a diminishment prohibited by the Home Rule Charter Law; and whether the benefit was part of a "pension or retirement system" as that phrase is used in the Home Rule Charter Law. *Supreme–FOP II,* 595 Pa. at 55, 938 A.2d at 231. In a footnote, the Supreme Court expressly declined to make any constitutional pronouncements.

Ultimately, the Court determined that the premium cap was not a diminishment prohibited by the Home Rule Charter Law. The Court specifically declined to rule on the rationale adopted by the Commonwealth Court in *Commonwealth–FOP II.* Thus, it did not address whether "post-retirement healthcare benefits were not part of a pension or retirement' system as they were contractually created and not statutorily conferred." *Id.* at 55, 938 A.2d at 231. As a result, the Court affirmed the Commonwealth Court on a different rationale.

The decision in *Supreme–FOP II* is noteworthy in several respects. First and foremost, the Supreme Court applies *Upper Providence* to resolve issues relating to the diminishment of post-retirement healthcare benefits for former and current employees of a home rule municipality. *Upper Providence* is therefore binding on us in this case. Second, the Supreme Court refused to follow any of this Court's rationale in *Commonwealth–FOP II.* To the extent that any of that rationale is inconsistent with *Upper Providence,* its application here is problematic.

## D. *Millcreek Township Police*

This Commonwealth Court decision dealt with a change in post-retirement healthcare benefits for current police officers who would retire in the future. Like the present case, an arbitration award changed the post-retirement healthcare benefits from officer and spouse to officer only. The township was not a home rule municipality; therefore, the Home Rule Charter Law was not at issue. Instead, only constitutional issues were raised.

This Court declined the police officers' invitation to apply *Upper Providence,* because that case only resolved Home Rule Charter Law issues and not constitutional issues. The Court held that the change of post-retirement healthcare benefits did not violate any constitutional protections.

*Millcreek Township Police* has limited application here. It has no application to the main issue involving the Home Rule Charter Law. It may be useful, however, should it be necessary to address the FOP's alternate constitutional claims.

## E. Conclusions

We reach several conclusions from the foregoing review. First, the Supreme Court's decision in *Upper Providence* controls. Second, our Supreme Court has treated post-retirement healthcare benefits of *former* and *current* employees as a right or privilege protected from diminishment by Section 2962 of the Home Rule Charter Law. *Upper Providence;* see *Supreme–FOP II.* Third, to the extent that language

in *Commonwealth–FOP II* is not consistent with the foregoing, we decline to apply it in this context.

The FOP offers an analysis as to how the change in post-retirement healthcare in this case works a diminishment. The City and its allies do not argue to the contrary; rather, they argue in avoidance that the benefits are not protected by the Home Rule Charter Law. Accordingly, we deem it undisputed that Section 4(a) of the award results in a diminishment of post-retirement healthcare benefits.

Given these conclusions, we share the view of the respected trial court: the arbitration panel majority exceeded its powers when, in Section 4(a) of the award, it diminished post-retirement healthcare benefits. As this provision offends the protections of Section 2962 of the Home Rule Charter Law, it must be vacated. Given our ruling on the Home Rule Charter Law, we decline to address constitutional issues.[12] Thus, we affirm.

Judge McCULLOUGH did not participate in the decision in this case.

## ORDER

**AND NOW,** this 22nd day of February, 2012, it is **ORDERED and DECREED** as follows:

The Application to Intervene by Department of Community and Economic Development and the Act 47 Coordinator is **GRANTED;** and

The August 24, 2010, order of the Court of Common Pleas of Cambria County va-

cating Section 4(a) of the interest arbitration award is hereby **AFFIRMED.**

DISSENTING OPINION BY Judge PELLEGRINI.

The only issue before us is whether Section 2962(c)(3) of the Home Rule Charter and Optional Plans Law (Law)[1] prohibits an arbitration award in home rule municipalities from post-retirement benefits for **current employees.** Without making an independent analysis, the majority's sole reason for finding that an arbitration award cannot reduce those benefits is based on its belief that the question is controlled by our Supreme Court's decision in *Appeal of Upper Providence Township*, 514 Pa. 501, 526 A.2d 315 (1987) (*Upper Providence*), which it contends mandates such a result. I disagree with the majority because our decision in *City of Pittsburgh v. Fraternal Order of Police*, 911 A.2d 651 (Pa.Cmwlth.2006) (*FOP II*), at the express invitation of our Supreme Court to address that issue, held that *Upper Providence* does not control, and based on an independent analysis of Section 2962(c)(3) of the Law, held that such an award does not prohibit an arbitration award or a collective bargaining agreement from reducing future benefits. Before addressing why *Upper Providence* does not control, a review of the "clean slate" analysis of why that provision does not prevent an arbitration award from reducing benefits would is useful.

53 Pa.C.S. § 2962(c)(3) provides that a municipality shall not "[b]e authorized to diminish the rights or privileges of any former municipal employee entitled to ben-

---

**12.** After argument, our Supreme Court rendered its decision in *City of Erie v. Pennsylvania Labor Relations Board*, ––– Pa. –––, 32 A.3d 625 (2011) (public employer may not unilaterally eliminate legal pension benefits without first collectively bargaining with fire-

fighters' representative). We carefully reviewed the decision, but it does not impact the current controversy. No further discussion is required.

**1.** 53 Pa.C.S. § 2962(c)(3).

efits *or any present municipal employee* in his ***pension or retirement system.*** (Emphasis added.) In *FOP II*, we held that provision does not preclude, through collective bargaining, diminishing of pension benefits awarded through the collective bargaining contract or interest award because benefits so awarded were not part of "rights or privileges ... any present municipal employee [had] in his or [her] pension or retirement system." 911 A.2d at 656. We explained that prior to the enactment of a Home Rule Charter, Act 111[2] or Act 195,[3] the General Assembly had created pension systems for most classes of municipalities. When the General Assembly implemented the constitutional requirement in 1972 by adopting the Home Rule and Optional Plans Law, home rule municipalities were given the right to change statutes that were not of statewide application. *See Appeal of Upper Providence Township (Upper Providence I)*, 93 Pa.Cmwlth. 272, 502 A.2d 263 (1985). Because no municipal pension statute was statewide in application, the General Assembly was concerned that home rule municipalities would take it upon themselves to unilaterally change the statutorily-created pension systems. It foreclosed that possibility when it provided in 53 Pa.C.S. § 2962(c)(3) that home rule did not include that power for present employees. Moreover, unlike its language relating to retired employees where no "benefits" could be reduced, Section 2962(c)(3) of the Law provided that for "present" employees, only specifically identified benefits, i.e., those awarded as part of the "pension or retirement system," could not be reduced. The use of the term "system" is also particularly pertinent because the statutory retirement system administered at the state level are called systems, e.g., Public School Employee Retirement; State Employee Retirement System and other pension plans created by statute.[4]

Moreover, the origin of that provision shows that it can only refer to the benefits awarded pursuant to statutory pension systems, not through collective bargaining. Section 2962(c)(3) of the Law is based on Section 305 of the Optional Third Class City Law, Act of July 15, 1957, P.L. 901, 53 P.S. § 41305, which provided that "[t]he charter of any city adopted in accordance with this act shall not give any power or authority to diminish any rights or privileges of any present city employe in his **pension or retirement system.**" That provision of the Optional Third Class City Law was enacted in 1951, approximately 30 years before the enactment of Act 111 and Act 195 that gave employees the right to bargain, and in the case of police and fire employees, the right to interest arbitration. That means that the term "pension or retirement system" could only refer to the statutory benefits granted by the General Assembly because there was

---

**2.** Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10.

**3.** The Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

**4.** See the Second Class City Code, Act of August 1, 1975, P.L. 169, > 53 P.S. §§ 23641–> 23666 (Policemen's Relief and Pension Fund); the Second Class A City Code, Act of July 3, 1947, P.L. 1242, as amended, > 53 P.S. §§ 30491–30515.1 (Policemen and Firemen's Pension Funds); the Third Class City

Code, Act of May 29, 1956, P.L. (1955), as amended, 53 P.S. §§ 761–778 (Police Pension Fund); the First Class Township Code, Act of June 24, 1931, P.L. 1206, as amended, 53 P.S. §§ 56409–56413; the Second Class Township Code, Act of May 1, P.L. 1933, P.L. 103, reenacted and amended, November 9, 1995, P.L. 350, 53 P.S. §§ 66910; the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, as amended, 53 P.S. §§ 46131–46137 (Police Pension Fund). None of these Codes provide for post-retirement medical benefits.

no collective bargaining when that provision was enacted.

Finally, all that Section 2962(c)(3) of the Law states is that a municipality cannot unilaterally reduce pension benefits for current employees, not that it could not reduce them through collective bargaining. Recently, our Supreme Court in *City of Erie v. Pennsylvania Labor Relations Board*, —— Pa. ——, 32 A.3d 625 (2011), implicitly recognized that through collective bargaining, future benefits for current employees could be reduced. In that case, the City of Erie, an Optional Third Class Charter City, ceased a Deferred Retirement Option Plan under which retiring firefighters could elect to receive a lump-sum payout at retirement in exchange for a lower monthly pension benefit. In the opening paragraph of its opinion in *City of Erie*, the Supreme Court stated that the issue before it was as follows:

> In this appeal by allowance, we consider, inter alia, whether a public employer committed an unfair labor practice when it unilaterally eliminated firefighter pension benefits, which were found to be legal, without first collectively bargaining with the firefighters' representative. ***The Collective Bargaining by Policemen and Firemen Act, commonly known as Act 111 ("Act 111"), by its express terms, requires negotiation over the modification or elimination of pension benefits, and we find no applicable exception to this statutory mandate. (Emphasis added.)***

*City of Erie*, 32 A.3d at 627.

Nothing in Section 2962(c)(3) of the Law precludes the elimination of a future benefit or deferred benefit for a present gain as long as it is not done unilaterally by the home rule employer.

Notwithstanding all of that, if our Supreme Court held in *Upper Providence* that current employees' benefits cannot be reduced, we are bound to follow that decision. While the majority believes that it did, apparently our Supreme Court was not so certain because rather than reversing our decision in *FOP I*,[5] it remanded to this Court for a determination of whether it was, in fact, controlling. In *FOP II*, as in this case, the public employer was a home rule municipality, and an arbitration award changed post-retirement health care benefits for current employees. The issue before us in that appeal was identical to the one presented here—whether *Upper Providence* addressed if under 53 Pa.C.S. § 2962(d), home rule municipalities were not authorized to diminish the rights or privileges of any former municipal employee entitled to benefits or any present municipal employee in his or her pension. In answering the question the Supreme Court instructed us to address, we held that it did not because the issue of current employees was not before the Supreme Court in *Upper Providence*. We explained:

> The FOP argues that it covers present employees pointing out that Justice Larsen stated that the "home Rule Act [prohibited home rule municipalities] from voluntarily eliminating the post-retirement hospital and medical benefits for **present and former** employees." (Emphasis added.) However, this language was, at best, dicta and more likely a stray comment because the issue addressed at all stages in the proceedings was whether post-retirement medical benefits could be provided to **retired**

**5.** In *City of Pittsburgh v. Fraternal Order of Police*, 850 A.2d 846 (Pa.Cmwlth.2004) (*FOP I*), we only addressed the issue of Section 2962(c)(3) in a footnote stating that a home rule municipality was foreclosed from unilaterally changing pensions by passing an ordinance and that it did not foreclose reduction in benefits for employees through the collective bargaining process or an Act 111 arbitration award.

employees and their families, not whether benefits could be reduced prior retirement. Moreover, throughout the rest of the opinion, the class of "employee" being addressed was "former" or "retired employees." To answer, then, the precise question framed to use by our Supreme Court, "Whether the Commonwealth Court's decision permitting the reduction of post-retirement healthcare benefits for **active** officers conflicts with the Supreme Court decision in *Appeal of Upper Providence Township,* 514 Pa. 501, 526 A.2d 315 (Pa.1987)," [sic] for those reasons set forth above, it appears that it does not. (Bold in original.) *FOP II,* 911 A.2d at 655. Contrary to the majority's mistaken impression that the matter was remanded to us to apply *Upper Providence* and we refused to do so, in *FOP II,* we did exactly what the Supreme Court instructed us to do and found that *Upper Providence* was not controlling. Tellingly, while our Supreme Court affirmed *FOP II* on other grounds, it did not disavow our reasoning, instead stating that: "We issue no pronouncement on the soundness of the Commonwealth Court's rationale for distinguishing *Upper Providence* from the matter *sub judice.*" *FOP II,* 595 Pa. at 57, 938 A.2d at 232 n. 10. Because we held in *FOP II* that *Upper Providence* does not preclude the reduction in benefits for current employees and that was not disavowed by the Supreme Court, that decision is controlling, especially given the recent Supreme Court decision in *City of Erie.*

For the foregoing reasons, I respectfully dissent.

President Judge LEADBETTER and Judge COHN JUBELIRER join in this dissenting opinion.